739 P.2d 1351

### COMMERCIAL CORNICE & MILL-WORK, INC., an Arizona corporation, Plaintiff-Appellant,

v.

### CAMEL CONSTRUCTION SERVICES CORPORATION, an Arizona corporation; Malarkey's Incorporated, an Arizona corporation; Timothy Herbst and Jane Doe Herbst, his wife; Ronald Heberley and Jane Doe Heberley, his wife; all individually and d/b/a Malarkey's, Defendants-Appellees.

No. 1 CA-CIV 8756.

Court of Appeals of Arizona, Division 1, Department A.

July 2, 1987.

George R. Ferrin, Diana Weinert-Landrith, Meyer, Vucichevich & Cimala, P.C., Phoenix, for plaintiff-appellant.

Peter Strojnik, Mori, Strojnik and Riordan, Phoenix, for defendants-appellees.

NOREEN SHARP, Judge Pro Tem.

This is an appeal from the trial court's orders denying appellant's two motions to amend the complaint, and granting appellee's motion to dismiss for failure to state a claim. We affirm the denial of the motions to amend the complaint. We affirm the dismissal of the claim for foreclosure of the mechanic's lien. We reverse the dismissal of the claims for breach of contract and restitution.

Commercial Cornice & Millwork, Inc. (Subcontractor) contracted with Camel Construction Services Corporation (General Contractor) to furnish labor and materials to Malarkey's, Incorporated and its officers, Timothy Herbst, Ronald Heberly, Seymour Brier, and their spouses (Owner). After numerous change orders, Subcontractor claimed it was owed $177,773. Subcontractor alleged that during construction Owner agreed to pay Subcontractor the full amount due under the subcontract and the change orders. Owner paid part of the amount claimed by Subcontractor, but Subcontractor has not been paid $99,773 by either Owner or General Contractor.

In Count I of the complaint Subcontractor apparently sought the remaining amount due from Owner and General Contractor, and to foreclose its mechanics' lien on Owner's property. In Count II Subcontractor claimed from Owner the reasonable value of the labor and materials provided.

Subcontractor filed two motions to amend the complaint which were both denied by the superior court. Owner filed a motion to dismiss for failure to state a claim which was granted as follows:

As stated at the time of oral argument, the complaint does NOT make any allegations of a direct contract between plaintiff and defendants other than Camel. The complaint affirmatively alleges a contract between Camel and Commercial and since the exhibits appended thereto seem to prove the existence of such a contract, there can be no personal judg-

ment against the owners on the theory of quantum meruit. A review of the complaint and the attachments [sic] discloses that plaintiff has failed to allege compliance with essential requirements of the mechanics lien statutes.

IT IS THEREFORE ORDERED granting defendants (other than Camel)'s [sic] Motion to Dismiss for Failure to State a Claim.

In September, 1985, pursuant to a stipulation between General Contractor and Subcontractor, the superior court entered judgment in favor of Subcontractor and against General Contractor for $99,773, and costs and attorney's fees.

We consider the following four questions:

(1) did the superior court abuse its discretion in denying Subcontractor's motions to amend its complaint;

(2) did the superior court err in dismissing Subcontractor's claim for foreclosure of its mechanics' lien because of the failure to comply with A.R.S. § 33–993(A)(6);

(3) did the superior court err in concluding that Subcontractor failed to state a claim against Owner for breach of contract;

(4) did the superior court err in dismissing Subcontractor's claim against Owner for restitution?

## DENIALS OF MOTIONS TO AMEND COMPLAINT

Subcontractor complains that the trial court abused its discretion in denying two motions to amend the complaint. We disagree.

The complaint was filed March 22, 1983. Trial was originally set for October 29, 1984, and was continued four times between January, 1985, and June, 1985.

On April 25, 1985, Subcontractor moved to amend its complaint to add a $30,000 tax assessment to the damages sought in the restitution claim. Subcontractor asserted that "Defendants have known for some time that Plaintiff suffered a penalty in the amount of approxi-

mately $30,000.00." The existence of the federal tax lien was apparently known to Subcontractor at least since July, 1984 and, in light of the multiple trial settings, Subcontractor could have moved to amend the complaint much earlier than it did. The superior court, therefore, could have determined that this issue was untimely, would require additional research and discovery, would cause unnecessary delay and would unduly prejudice Owner. *See Spitz v. Bache & Co., Inc.,* 122 Ariz. 530, 596 P.2d 365 (1979). *See also Green Reservoir Flood Control District v. Willmoth,* 15 Ariz.App. 406, 489 P.2d 69 (1971).

On June 20, 1985, after the trial court granted Owner's motion to dismiss for failure to state a claim, Subcontractor again moved to amend its complaint. This time it apparently desired to allege that it had taken all steps required by law to perfect its lien, that General Contractor was the agent of Owner, and that Owner had not paid anyone for the benefit conferred on it. No copy of the proposed amended complaint was attached to this motion. In fact, not until September 26, 1985, when Subcontractor filed a motion to reconsider the denial of the second motion to amend, did Subcontractor provide the court with a copy of the proposed amended complaint. Subcontractor gives no reason why the second motion to amend the complaint was not filed until June, 1985, after the fifth trial setting. We conclude that the superior court properly exercised its discretion in denying this second motion to amend.

## DISMISSAL FOR FAILURE TO STATE A CLAIM—FORECLOSURE OF MECHANICS' LIEN

Subcontractor next argues that the trial court erred in ruling that the complaint did not state a cause of action for lien foreclosure. We disagree. Section 33–993(A)(6) of the Arizona Revised Statutes provides that a notice and claim of lien shall contain "[a] statement of the date that the labor, materials, machinery, fixtures or tools were first furnished to the jobsite." Subcontractor's notice and claim of lien violated A.R.S. § 33–993(A)(6) be-

cause it did not contain the date labor was first furnished.

Arizona courts have considered whether a failure to comply with various specific requirements of A.R.S. § 33–993(A) invalidates a lien. *See, e.g., Old Adobe Office Properties, Ltd. v. The Honorable Harry Gin,* 151 Ariz. 248, 727 P.2d 26 (App.1986) (depositing a copy of the notice and claim of lien in first-class regular mail without obtaining a certificate of mailing does not constitute a valid method of service under A.R.S. § 33–993(A)); *Smith Pipe & Steel Co. v. Mead,* 130 Ariz. 150; 634 P.2d 962 (1981) (a notice and claim of lien containing an erroneous legal description is not sufficient to meet the requirements of A.R.S. § 33–993(A)(1)); *Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 561 P.2d 750 (App.1977) (a notice and claim of lien which does not state the name of the record owner and which is not served on the record owner does not comply with A.R.S. § 33–993). *See generally James Weller, Inc. v. Hansen,* 21 Ariz.App. 217, 224, 517 P.2d 1110, 1117 (1973) ("The most vital parts of perfecting a lien are the time elements, the content and the recording"). However, these courts have never considered whether failure to comply with A.R.S. § 33–993(A)(6) invalidates a lien.

Substantial compliance with the mechanics' lien statutes is sufficient if not inconsistent with the overall legislative purpose of the statutes. *The Columbia Group, Inc. v. Jackson,* 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986). The purpose of A.R.S. § 33–993 is to give an owner notice of a claim so that it can investigate and determine whether a charge is proper. *Old Adobe Office Properties, Ltd.,* 151 Ariz. at 250, 727 P.2d at 28. The failure to state the date labor was first furnished to a jobsite, information specifically required by the statute, does not constitute sufficient notice to the owner of the claim or substantial compliance with A.R.S. § 33–993. As stated by Division Two of the Arizona Court of Appeals, we cannot rewrite the Arizona mechanics' lien statutes:

If the default or neglect is material to the perfection of a lien, it is beyond the remedial scope of equity, in the exercise

of its usual powers, to protect the lien claimant against the untoward consequences of what may be and probably was his own neglect. The courts cannot read into either the statutes or the claim of lien what is not there, or take from either what is there.

*Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 432, 561 P.2d 750, 756 (App.1977).

Subcontractor argues that the date labor was first supplied can be approximated by reference to the date of the Subcontract, which was attached to the Notice and Claim of Lien. We disagree. Mere reference to the Subcontract does not provide substantial compliance with A.R.S. § 33–993(A)(6). The date of a contract may be irrelevant to the date labor is first furnished. Furthermore, A.R.S. § 33–993(A)(3) specifically requires that a copy of the contract must be attached to the notice and claim of lien. Subcontractor's interpretation renders A.R.S. § 33–993(A)(6) superfluous.

Subcontractor also argues that the date the labor was first furnished to the job site is to be pled for time purposes in order to ascertain the 20 days previous to lien filing. Subcontractor has apparently confused the notice and claim of lien required by A.R.S. § 33–993 with the preliminary twenty day notice required by A.R.S. § 33–992.01(C). The date twenty days before a mechanics' lien is recorded has no relevance to A.R.S. § 33–993.

The notice and claim of lien attached to the complaint did not comply with A.R.S. § 33–993. The trial court correctly dismissed the allegations related to lien foreclosure. Because of our resolution of this issue, we need not decide whether Subcontractor properly recorded and served the notice and claim of lien, or whether Subcontractor was required to comply with A.R.S. § 33–992.01 regarding the preliminary twenty day notice.

## DISMISSAL FOR FAILURE TO STATE A CLAIM—BREACH OF CONTRACT

Subcontractor argues that Count I of its complaint states a claim for breach of con-

tract against Owner in addition to a claim for foreclosure of its mechanics' lien and that the dismissal of the complaint for this reason was incorrect. We agree.

In Count I, Subcontractor alleged that Owner agreed to pay Subcontractor upon completion of its work under the Subcontract and Change Orders, that Subcontractor completed this work, and that Owner refused to pay:

#### IV

That Defendant, Camel, pursuant to said written Subcontract Agreement and Change Orders agreed to pay Commercial the total sum of $177,773.00. That during construction of said Subcontract Agreement and Change Orders, Defendants Timothy Herbst, Ronald Heberley and Seymour Brier, as officers of Malarkey's Incorporated and also individually and personally d/b/a Malarkey's, personally agreed to pay Commercial, upon completion of all work required pursuant to said Subcontract Agreement and Change Orders in full.

#### V

Commercial has performed its obligations under said written Subcontract Agreement and Change Orders and there is currently due from Defendants, Camel, Malarkey's Incorporated, Timothy Herbst and Jane Doe Herbst, Ronald Heberley and Jane Doe Heberley, and Seymour Brier and Jane Doe Brier, d/b/a Malarkey's, the sum of $99,773.00, together with interest thereon at the highest lawful rate from December 16, 1982, until paid.

#### VI

Commercial has demanded that said Defendants pay said sum to Plaintiff, but Defendants have refused, and still refuse to do so.

. . . .

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. Against the Defendants, Camel Construction Services Corporation, Malarkey's Incorporated, Timothy Herbst and Jane Doe Herbst, Ronald Heberley and Jane Heberley, Seymour Brier and Jane Doe Brier, d/b/a Malarkey's, in the principal sum of $99,773.00, plus interest thereon at the highest lawful rate from December 16, 1982, until paid, plus Plaintiff's reasonable attorneys' fees in the sum to be proven at the time of trial, but in no event less than $20,000.00. . . .

■ The trial court determined that the complaint did not make any allegations of a direct contract between plaintiff and defendants other than Camel. To state a claim in contract the complaint must allege an agreement, the right to seek relief, and breach by the defendant. *City of Tucson v. Superior Court*, 116 Ariz. 322, 569 P.2d 264 (App.1977). Rule 8(a)(2) of the Arizona Rules of Civil Procedure requires only that a pleading contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief" and Rule 8(g) requires that "[a]ll pleadings shall be construed to do substantial justice." Paragraphs IV, V, and VI together allege all three elements required by *City of Tucson* and the complaint is therefore minimally sufficient to state a claim for breach of contract against Owner.

### DISMISSAL FOR FAILURE TO STATE A CLAIM—RESTITUTION

The superior court also dismissed Subcontractor's claim for restitution on the basis that there was a contract between Subcontractor and General Contractor which precluded personal judgment against Owner on a theory of *quantum meruit.* We disagree.

Section 1 of the *Restatement of Restitution* (1937) provides that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Owner does not argue that it has not been enriched by Subcontractor's performance. Thus, the focus of our analysis is whether the circumstances of Owner's receipt of that benefit are such that, as between Owner and Subcontractor,

it is unjust for Owner to retain the benefit. *See Restatement of Restitution* § 1, comment c (1937). The Arizona Supreme Court has also recently stated " ... the remedy of restitution is not confined to any particular circumstance or set of facts. It is, rather, a flexible, equitable remedy available whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity' to make compensation for benefits received." *Murdock-Bryant Construction, Inc. v. Pearson,* 146 Ariz. 48, 703 P.2d 1197 (1985), *citing* D. Dobbs, *Remedies* § 4.2 at 235, *quoting Moses v. MacFerlan,* 2 Burr. 1005, 97 Eng.Rep. 676 (K.B.1760).

Of particular relevance to the issue we address here is *Costanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969). In that case a subcontractor sued an owner for unjust enrichment. The owner paid no one for the work performed by the subcontractor. The court affirmed judgment in favor of the subcontractor and against the owner, relying on the *Restatement of Restitution* § 40, as follows:

> The same result follows where a person accepts services from another, having reason to know the other is under a belief that the recipient or a third person has promised a compensation or is otherwise under a duty to pay for them. In both cases the recipient is liable for the reasonable value of the services irrespective of their value to him.

*Costanzo v. Stewart,* 9 Ariz.App. at 432, 453 P.2d at 528.

The cases relied on by Owner to support its argument that Subcontractor has no restitution claim against it are easily distinguished. In *Advance Leasing & Crane Co., Inc. v. Del E. Webb Corp.,* 117 Ariz. 451, 573 P.2d 525 (App.1977) a subcontractor sought recovery from an owner based on the theory of *quantum meruit.* The appellate court rejected the theory because the owner had paid the general contractor under the terms of the contract between them. It was in this factual context that the court ruled that the doctrine of *quantum meruit* had no application to the later claim by the subcontractor, since there was no unjust enrichment to the owner.

Similarly, in *Stratton v. Inspiration Consolidated Copper Co.,* 140 Ariz. 528, 683 P.2d 327 (App.1984), the court relied on the holding of *Advance Leasing* and ruled that no payment was due to a subcontractor by an owner under the . doctrine of unjust enrichment where an explicit contract existed between the subcontractor and the general contractor. The factual context, once again, was that the owner paid the general contractor for the work, although the general contractor did not pay the subcontractor.

This same issue was also addressed in *Columbia Group, Inc. v. Homeowners Association of Finisterra, Inc.,* 151 Ariz. 299, 302, 727 P.2d 352, 355 (App.1986), where the court denied a subcontractor's claim for restitution against the owners on the basis that "the evidence fails to show any benefit they received *for which they did not pay.*" (Emphasis added)

We are further guided by the decision in *Murdock-Bryant.* In that case the subcontractor sued the general contractor and the general contractor's joint venturers for restitution. The joint venture was formed after the general contractor's misrepresentation to the subcontractor and after the subcontract agreement was executed; therefore, the joint venturers were not liable to the subcontractor for fraud or for breach of contract. *Murdock-Bryant Construction, Inc. v. Pearson,* 146 Ariz. at 52, 703 P.2d at 2001. The court determined that the joint venturers received a benefit because the subcontractor's performance was necessary for the completion of the joint venture's contract with the owner, and that retention of the benefit without compensation to the subcontractor was unjust, since the subcontractor performed its work with the expectation of compensation. The court concluded that restitution from the joint venturers was appropriate, despite the existence of a contract between the subcontractor and the general contractor.

Finally, we note the recent decision of *Scottsdale Memorial Health Systems, Inc. v. Clark,* 2 CA–CIV 5956 (Ariz.App. Mar. 3,

1987) which recognized that "[t]he remedial purpose of the mechanic's lien statute is to protect laborers and material suppliers who enhance the value of another's property, *id.*, and to prevent unjust enrichment of the property owners." Slip op. at 5. While this decision does not affect our opinion that in this case Subcontractor failed to state a claim for foreclosure of mechanic's lien, it does support our reasoning that Subcontractor can state a claim against Owner for restitution.

█ It is our opinion that, based upon the attendant alleged circumstances in the present case, Subcontractor can and did state a claim for restitution against Owner, notwithstanding the existence of a contract between Subcontractor and General Contractor. The superior court erred in dismissing the claim.

### CONCLUSION

We affirm the superior court's denial of the motions to amend the complaint, and its dismissal of subcontractor's claim for foreclosure of the mechanics' lien. We reverse the superior court's dismissal of Subcontractor's claims for breach of contract and for restitution. We deny both parties' requests for attorneys' fees incurred in connection with this appeal, and we remand this case for proceedings consistent with this decision.

GRANT, P.J., and CONTRERAS, J., concur.

NOTE: NOREEN SHARP was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.