786 P.2d 1045

**A M LEASING, LIMITED,**
Plaintiff–Appellant,

v.

**Bill BAKER dba Bill Baker Repair
Service, Defendant–Appellee.**

No. 1 CA–CV 88–209.

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 14, 1989.

Review Denied March 6, 1990.

Piatt & Livoni, P.C. by Norris C. Livoni and William M. Piatt, Phoenix, for plaintiff-appellant.

Richard E. Clark, Scottsdale, for defendant-appellee.

## OPINION

BROOKS, Judge.

This is an appeal from a superior court judgment in an action in replevin to recover

a backhoe owned by appellant A M Leasing, Ltd., (A M). A M has appealed from the judgment insofar as it (a) allows appellee Bill Baker to recover either the detachable parts that he had added to the backhoe or their value—$1,500; and (b) awards Baker his attorney's fees. We address the following issues:

(1) Did Baker have a viable claim for restitution under *Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 694 P.2d 246 (1985)?

(2) If not, will the doctrine of unjust enrichment support the result reached by the trial court?

Because we answer both of these questions in the negative, we reverse the judgment and remand the matter to the superior court for entry of judgment in favor of A M. We need not consider the propriety of the trial court's award of attorney's fees.

## FACTS AND PROCEDURE

The following facts, alleged in A M's complaint and application for provisional remedy, are apparently undisputed. In May of 1986, A M leased a 1973 Case 580B backhoe to defendant Murray Griffin. By March of 1987, Griffin had been in default under the lease for about two months. Defendant Baker had come into possession of the backhoe when Griffin asked him to provide maintenance and service on it.[1] When Griffin failed to pay Baker for these services, Baker claimed a garageman's lien against the backhoe. A M sought judgment against Griffin in the amount of $10,420—the balance due under the lease[2]—and a provisional order under A.R.S. section 12-2402 directing the Maricopa County Sheriff to take possession of the backhoe without notice to Baker and to deliver it to A M.

A M posted a $15,000 bond, and the trial court issued the replevin order requested.

After the order had been executed, Baker filed a sworn petition to quash it.

The following allegations in the petition were apparently undisputed. Baker's repair shop had performed repairs on the backhoe at Griffin's request. The repairs were valued at $3,208.11, a figure that included $1,500 in parts that could be removed without damaging the backhoe. Baker claimed to have lien rights in the backhoe under A.R.S. sections 33-1021 and 33-1022. He argued that A M's lease with Griffin had authorized him to agree to repairs and maintenance on A M's behalf, that he had a right to recover the full amount of his bill with interest, and that he had an independent right, under applicable case law, to recover the detachable parts that he had installed in the backhoe.

A M opposed the petition, arguing that Griffin was not its agent for the purpose of authorizing repairs on the backhoe and that Baker therefore had no valid lien rights. A M also argued that because it had filed a UCC-1 financing statement concerning the lease, its own interest in the backhoe would have priority over any garageman's lien claimed by Baker under A.R.S. section 33-1022.

After several hearings at which arguments of counsel were heard but no evidence was presented, the trial court ruled that Baker's lien on the backhoe was secondary to A M's interest, but also determined that Baker was entitled to recover the detachable parts or their value—$1,500. Judgment was entered to this effect, further awarding Baker attorney's fees of $1,406.25 with interest. This appeal followed.

■ As a preliminary matter, we note that Baker not only argues in support of the trial court's judgment, but also urges that it be expanded on appeal to compensate him for the full amount of his charges

---

1. Appended to and incorporated in the complaint was a copy of the lease agreement between A M and Griffin, which contained the following provision:

   Lessee accepts receipt of the leased property in good repair and promises to maintain it in the same condition, reasonable wear and tear excepted, and to bear all expense of necessary repairs, maintenance, replacement or operation. All replacement parts or additions to the leased property shall be property of Lessor.

2. The claim against Griffin was dismissed and plays no part in this appeal.

for parts and labor. Because Baker failed to cross-appeal from the judgment, however, he cannot seek to enlarge his rights under the judgment, and any cross-questions he raises in response to A M's issues on appeal can be considered only in support of the judgment as entered. *Madisons Chevrolet, Inc. v. Donald,* 109 Ariz. 100, 505 P.2d 1039 (1973); *Hackin v. Gaynes,* 103 Ariz. 13, 436 P.2d 127 (1968). We therefore do not consider whether the trial court erred in its conclusions regarding the existence or priority of Baker's asserted lien.

## BAKER'S CLAIM FOR RESTITUTION

A M argues that the trial court erred in holding that, under *Bank of America v. J. & S. Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985), Baker was entitled to recover either the detachable parts that he had installed in the backhoe or their reasonable value—$1,500. A M contends that the analysis employed by our supreme court in *Bank of America* is inapplicable to the instant case, and we agree.

In *Bank of America,* the bank entered into a conditional sales agreement with Thomas H. Duncan for the purchase of a Voyager Van, with a lien in favor of the bank. A fire later destroyed parts of the van, including the engine and transmission. Duncan had it towed to J. & S. Auto Repairs (J & S) and instructed J & S to dismantle the van in order to make a repair estimate. Neither Duncan nor the bank authorized J & S to repair or store the van. Duncan later disappeared, and J & S was unable to reach him despite considerable effort.

In the van, J & S found a copy of the conditional sales contract and a California Highway Department slip, neither of which reflected Bank of America's lien. On the basis of these documents, a title service reported to J & S that the van was not stolen and that there were no liens on it. J & S's owner concluded that Duncan had abandoned the van and that J & S now owned it. After applying for a bonded title, J & S effectively rebuilt the van, replacing the engine, transmission, tires,

and other parts. When the bonded title failed to arrive, J & S again contacted the title service, which rechecked the van's title and discovered Bank of America's lien.

The bank commenced a replevin action, and J & S surrendered the van to the bank without prejudice to its claims for repair charges and unjust enrichment. The trial court awarded possession of the van to the bank and $3,000 in damages to J & S for unjust enrichment. Both parties appealed, and Division 2 of this court found that J & S had no lien or security interest in the van and was also not entitled to restitution. On review, our supreme court agreed that J & S had no lien or security interest, but held that J & S was entitled to recover either the detachable parts that it had installed in the van or their reasonable value.

The court based its holding upon an analysis of sections 39 and 42 of the *Restatement of Restitution* (1937). *Restatement* section 42(2) states:

> A person who, in the mistaken belief that he or a third person on whose account he acts is the owner, adds value to the chattels of another, is not thereby entitled to restitution from the owner for the value of his services or the increased value given to the chattels; but if the owner brings an action for their conversion the added value or the value of the services, whichever is least, is deducted from the damages.

Noting that J & S had not defeated the bank's specific recovery in replevin by giving a bond, the court held that J & S was precluded by section 42(2) from recovering from the bank the value of its services or the increased value of the van. The court continued:

> J & S may be entitled, however, to collect the parts or the value of the parts installed in the van. The Restatement of Restitution § 42(2) precluded recovery of the "value of his services or the increased value." This language and the rationale behind § 42(2) do not necessarily encompass detachable parts put into a chattel that could be removed without damage to the chattel. The Restatement reasons that although it is harsh on the one mak-

ing improvements by mistake, § 42(2) precluded restitution because "it would be still more harsh to require the one receiving the benefits to pay" for the improvements. Restatement of Restitution § 42(2), comment a. Merely allowing the improver to remove his parts, however, does not frustrate this rationale as it does not impose costs on the owner. Furthermore, assuming the parts can be removed from the chattel without damaging it, allowing such removal leaves the owner with the chattel in the same condition it was before the improvements were made. If the owner refused to allow the improver to remove his parts at his expense, the improver should be allowed to recover the value of the parts.

143 Ariz. at 418, 694 P.2d at 248.

In support of this rationale, the supreme court also relied upon *Restatement of Restitution* section 39, together with comment d and illustrations 18 and 19. Section 39 states:

> Except as stated in §§ 41 and 42, a person is entitled to restitution from another *because of mistake of fact* if he has transferred to the other land, chattels, negotiable instruments or choses in action under such circumstances that, had he paid money to the other, he would have been entitled to restitution.

(Emphasis added.) The court stated:

> As explained in comment d, specific restitution of a chattel is prohibited if the chattel is incorporated into another chattel such that it cannot be severed from the chattel, thus following Restatement of Restitution § 42. Comment d. makes clear, however, that § 42 applies only if the chattel is incorporated; if removal of the chattel is possible, specific restitution is allowed, or alternatively the value of the chattel added.

*Id.* at 419, 694 P.2d at 249. The court concluded:

> In this case the record indicates that the motor and other parts added to the van can be removed without damage to the vehicle. The record also shows that J & S made the repairs under the mistaken belief that it owned the van. J & S did not commence repairs until after Betty's Title Service provided it with the motor vehicle division preliminary inspection report stating there were no liens on the van and Lohmeier determined that he owned the van. Thus, J & S has a viable restitutionary remedy for the detachable parts.

*Id.*

■ Unlike Baker and the trial court, we do not read *Bank of America* so broadly as to compel a holding that any person who installs detachable parts in a vehicle owned by another in reliance upon a third party's agreement to pay for them is entitled to recover those parts or their value from the vehicle's owner when the third party fails to honor his agreement. The supreme court's rationale in *Bank of America* developed specifically from its analysis of *Restatement of Restitution* section 42(2), which presupposes a plaintiff who has added value to the chattels of another in the mistaken belief that he (or a third person for whom he acts) is the owner, and of *Restatement* section 39, which similarly presupposes a plaintiff who has acted under a mistake of fact. Moreover, before holding that J & S had a viable claim for restitution, the supreme court was careful to note that J & S did not begin to repair the van until after it had received a motor vehicle division preliminary inspection report indicating that there were no liens on the van and had concluded that it owned the van.

■ In contrast, Baker does not claim to have acted in the mistaken belief that he owned the backhoe that Griffin brought to him for repair, nor does he claim to have acted under any other relevant mistake of fact. Baker's bid for restitution is founded solely upon the fact that he made repairs and added parts to the backhoe in reliance upon Griffin's implied promise to pay his reasonable charges—a promise that Griffin failed to honor. Baker does not claim that A M promised to cover the bill, that Baker mistakenly believed that Griffin was incurring charges on A M's account with A M's authorization, or that Baker acted under

some other mistake of fact that would have entitled him to restitution had he paid money to A M instead of adding detachable parts to its backhoe. *See Restatement of Restitution* § 39, quoted *supra* pp. 6–7, and comment a thereto.[3]

We conclude that Baker is not entitled to restitution under the rationale set forth in *Bank of America.* Nevertheless, Baker asserts that A M will be unjustly enriched if the trial court's judgment is not affirmed. We disagree.

■ We begin by noting that Baker is not entitled to prevail in this case merely because he can establish the obvious fact that he did not intend to repair the backhoe gratuitously. That fact becomes significant only if he can first establish that A M has been unjustly enriched at his expense:

In order to be granted restitution, [plaintiff] must demonstrate that [defendant] received a benefit, that by receipt of that benefit [defendant] was unjustly enriched at [plaintiff's] expense, and that the circumstances were such that in good conscience [defendant] should make compensation.

*Murdock–Bryant Construction, Inc. v. Pearson,* 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985) (quoting *Pyeatte v. Pyeatte,* 135 Ariz. 346, 352, 661 P.2d 196, 202 (App. 1983).

■ Although A M did receive a benefit (its backhoe was returned in good repair), that was a benefit to which it was entitled under its agreement with Griffin, and for which it gave full consideration. The lease provided that Griffin would "bear all expense of necessary repairs, maintenance, replacement or operation." By requiring A M to make restitution to Baker, we would deprive A M of the benefit of its bargain with Griffin.

■ Furthermore, neither our supreme court's recent decision in *Flooring Systems, Inc. v. Radisson Group, Inc.,* 160 Ariz. 224, 772 P.2d 578 (1989), nor its predecessors dictate that result. In *Flooring Systems,* the supreme court reviewed and compared the facts then before it with those in five previous decisions, harmonizing results that might otherwise be perceived as conflicting. In each case, the plaintiff, having contributed material or labor to improve the defendant's position or property, expected to be compensated and was not. The cases are of two types: one in which the defendant paid no one for the benefits received; the other in which the defendant paid in full, but paid someone to whom he was contractually liable for payment rather than the plaintiff, who actually provided the materials or services. The plaintiff prevails only in the first group of cases, for only in those may it fairly be said that the defendant has been unjustly enriched.

*Stratton v. Inspiration Consolidated Copper Co.,* 140 Ariz. 528, 683 P.2d 327 (App.1984), exemplifies the latter group of cases. There, the defendant property owner had hired a general contractor to do some construction work. The general contractor subcontracted some of the painting to the plaintiff. The owner paid the general contractor, but the general contractor failed to pay the plaintiff, whose subsequent suit against the owner included a claim for unjust enrichment. The owner prevailed both in the trial court and on appeal.

A similar result obtained in *Advance Leasing & Crane Co. v. Del E. Webb Corp.,* 117 Ariz. 451, 573 P.2d 525 (App. 1977). The facts in that case are analogous to those now before us. The defendant

---

**3.** Comment a to section 39, *Restatement of Restitution,* states:

The rules stated in §§ 15–28 are applicable to one who has conferred upon another a benefit other than money or services, except where chattels are incorporated into the land or chattels of another, as to which see Comment d and §§ 41 and 42.

*Restatement of Restitution* sections 15–28 set forth a variety of circumstances under which a person who pays money to another under mistake of fact is entitled to restitution. The situations under which this right of restitution arises range from "Mistaken Belief in Existence of Contract with Payee" (section 15) through "Mistaken Belief that Third Person Owes Duty to Payee" (section 23) to "Mistake Due to Fraud or Misrepresentation" (section 28). None of these fourteen sections applies to the facts now before us.

developer (Webb) was constructing a building at the University of Arizona. Webb entered into a contract with Meyeres & Sons Crane Service whereby Meyeres would supply, at agreed rates, increasingly larger cranes according to Webb's needs as construction progressed. When Meyeres was unable to obtain an extension for a 45–ton crane that Webb needed, Meyeres and Webb agreed that Meyeres would instead lease a crane from a third party, absorbing the costs that exceeded the rate at which it had agreed to bill Webb. Meyeres then leased a 125–ton crane from the plaintiff, Advance Leasing & Crane Co., for a rate substantially exceeding Webb's agreed rate. Webb paid Meyeres the amount due under their contract, but Meyeres failed to pay Advance Leasing, which then sought to recover from Webb based on a theory of unjust enrichment.

The trial court granted summary judgment in favor of Webb. On appeal, this court affirmed, relying on *Restatement of Restitution* section 110 [4] and noting that Webb "gave consideration for the benefit received and thereby was not unjustly enriched." 117 Ariz. at 453, 573 P.2d at 527. *See also Columbia Group, Inc. v. Homeowners Association of Finisterra, Inc.,* 151 Ariz. 299, 302, 727 P.2d 352, 355 (App. 1986) (denying subcontractor's claim against owners for restitution on the basis that "the evidence fails to show any benefit they received for which they did not pay.")

In contrast, *Flooring Systems* is typical of those cases in which the defendant, while retaining a benefit conferred by the plaintiff with expectation of payment, pays no one or renders only partial payment. *See also Commercial Cornice & Millwork, Inc. v. Camel Construction Services Corp.,* 154 Ariz. 34, 739 P.2d 1351 (App. 1987); *Costanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969); *Murdock–Bryant Construction, Inc. v. Pearson,* 146 Ariz. 48, 703 P.2d 1197 (1985).

In *Flooring Systems,* the owner (Radisson) hired a general contractor (Five–Star) for hotel renovations. Five–Star, in turn, entered into a subcontract with the plaintiff (Flooring Systems) for the purchase and installation of some $59,000 worth of carpet. When Five–Star defaulted on its obligation to Flooring Systems, Radisson withheld amounts due under the general contract with Five–Star, thus retaining at least $25,000 worth of carpet for which it had paid no one. Flooring Systems sued Radisson on several theories, including unjust enrichment.

In reversing the trial court's entry of summary judgment in favor of Radisson, the supreme court acknowledged the distinction, drawn earlier by this court in *Commercial Cornice,* 154 Ariz. at 39, 739 P.2d at 1356, between cases where the owner retained a benefit for which it had paid no one and cases such as *Stratton* and *Advance Leasing,* where "the owner had fully paid the general contractor, and thus was not unjustly enriched." 160 Ariz. at 226, 772 P.2d at 580.

The supreme court, apparently finding the facts in *Flooring Systems* to be more analogous to those in *Commercial Cornice* and *Costanzo,* went on to address whether, under the standard set forth in *Murdock–Bryant,* it would be unjust to allow Radisson to retain the carpet without paying for it. Apparently, this is also the basis upon which Baker suggests that he is entitled to restitution from A M.

There is no need, however, to reach that question in this case because, as in *Advance Leasing* and *Stratton,* A M has not been unjustly enriched. It has received no more than it was entitled to receive under its contract with Griffin—the return of its backhoe in good repair—a benefit for which it gave consideration by fully performing its obligations to Griffin.

Because the trial court's judgment in favor of Baker must be reversed, its award of attorney's fees to Baker must also be reversed. We need not consider whether that award in the first instance had any legal basis.

---

**4.** *Restatement of Restitution* section 110 states:
A person who has conferred a benefit upon another as the performance of a contract with another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.

The judgment is reversed and this matter is remanded to the trial court for entry of judgment in favor of A M Leasing.

GERBER, P.J., and GRANT, C.J., concur.