263 P.3d 77

**Richard M. WILLIAMSON and Kristen A. Williamson, husband and wife, and as Trustees of the Williamson Family Trust Dated November 8, 2002, Plaintiffs/Counter–Defendants/Appellees,**

v.

**PVORBIT, INC. dba Fountain Hills Door & Supply, an Arizona corporation, Defendant/Counter–Plaintiff/Appellant.**

No. 1 CA–CV 10–0390.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 1, 2011.

Squire Sanders & Dempsey LLP By Donald A. Wall and Gregory A. Davis, Phoenix, Attorneys for Plaintiffs/Appellees.

Jeffery M. Hall, PLC By Jeffery M. Hall and Barry J. Dale, Attorney at law By Barry J. Dale, Phoenix, Co–Counsel attorneys for Defendant/Appellant.

## OPINION

OROZCO, Judge.

¶ 1 PVOrbit, Inc., dba Fountain Hills Door and Supply (PVOrbit), appeals the trial court's grant of summary judgment in favor of Richard and Kristen Williamson (the Williamsons), as individuals, and as trustees of the Williamson Family Trust (the Trustees and collectively, the Appellees). The trial court found that the Williamsons, as Trustees, held equitable title to their home and therefore PVOrbit violated Arizona Revised Statutes (A.R.S.) section 33–420 (2007) by recording and refusing to release a mechanics' and materialmen's lien (the Lien) against their residence. For the reasons stated below, we affirm in part and reverse in part and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In May 2000, the Williamsons moved into a home (the Residence). The Williamsons quit-claimed the Residence to Richard and Kristen Williamson as Trustees of the Williamson Family Trust in March 2004 (the 2004 Deed). The 2004 Deed indicated that the beneficiaries of the trust were Richard and Kristen Williamson. For reasons not apparent from the record, in August 2005, the Williamsons again quit-claimed the Residence to Richard and Kristen Williamson as Trustees of the Williamson Family Trust (the 2005 Deed). The 2005 Deed made reference to a "beneficiary disclosure" that was located in the 2004 Deed. Both deeds were recorded with the Maricopa County Recorder's Office. However, the 2004 Deed did not have a copy of the Trust agreement attached.

¶ 3 In June 2005, the Williamsons entered into a contract with Freedom Architectural Builders (Freedom) to construct an addition to the Residence, at a cost of $204,773.35. Pursuant to the contract, Freedom was responsible for hiring, supervising, and paying subcontractors providing labor and materials for the project. The contract set forth a schedule for construction draws to be paid by the Williamsons to Freedom based on an

agreed upon schedule for completion of the construction.

¶ 4 Freedom contracted with PVOrbit to supply pre fabricated doors and hinges for the project. In March 2007, PVOrbit sent an invoice for $8,276.10 to Freedom for work completed on the Residence. In July 2007, Freedom informed the Williamsons that its financial condition had forced the company to abandon any remaining work on the Residence and some of the subcontractors had not been paid for work performed. Afterward, the Williamsons hired a new contractor to complete the project and ultimately paid $30,398.59 above the original contract price.

¶ 5 In the litigation that followed, PVOrbit alleged it had not been paid for the doors, hardware and related necessary trim work, while the Williamsons argued that the amounts owed to PVOrbit had been paid to Freedom in draw number six. It is undisputed that the last draw Freedom received from the Williamsons was draw number six.

¶ 6 Because PVOrbit was not paid, it recorded the Lien against the Residence for the amount of its unpaid invoices in August 2007. In response, the Williamsons sent a letter (the Williamsons' letter) requesting PVOrbit release the Lien. In their letter, the Williamsons claimed that Arizona law prohibited PVOrbit from placing a lien on the Residence because: they were owner-occupants within the meaning of A.R.S. § 33–1002.B, had resided in the Residence prior to the start of construction, PVOrbit did not have a signed contract with the Williamsons and Arizona law prohibited PVOrbit from placing a lien on the Residence. PVOrbit responded in a letter (the PVOrbit letter) asserting that the Trust held title to the Residence, not the Williamsons, and therefore PVOrbit refused to release the lien.

¶ 7 In February 2008, the Williamsons filed a lawsuit alleging PVOrbit violated A.R.S. § 33–420 by recording and refusing to release the Lien. The Williamsons claimed they were owner-occupants under the statute, which precludes subcontractors who do not have a contract with the owner of the property from recording a lien. Without knowledge of the Williamsons' lawsuit, PVOrbit sued Freedom and the Williamsons asking the tri-al court to enter an order foreclosing its lien on the Residence and alleging the Williamsons had been unjustly enriched because PVOrbit had not been paid. PVOrbit was subsequently notified that Freedom had filed bankruptcy, and the two lawsuits were consolidated.

¶ 8 The Williamsons moved for summary judgment, alleging pursuant to A.R.S. § 33–420 that PVOrbit had recorded a false document; they also sought summary judgment on PVOrbit's counterclaims regarding the lien foreclosure and unjust enrichment. PVOrbit filed a response and the Williamsons filed a reply.

¶ 9 The trial court granted the Williamsons' motion and held: first, as sole beneficiaries and trustees, the Williamsons were owner-occupants of the Residence under A.R.S. § 33–1002.A.2, and second, the Williamsons had not been unjustly enriched because they paid far more than the full contract price for the completion of the work. The trial court also assessed $6000 plus interest in penalties against PVOrbit under A.R.S. § 33–420. PVOrbit timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21.A.1, –2101.B (2003) and Article 6, Section 9, of the Arizona Constitution.

## DISCUSSION

¶ 10 On appeal, PVOrbit contends the trial court erred in: (1) granting summary judgment, because the Trust and not the Williamsons held title to the Residence; (2) assessing penalties in favor of the Williamsons; and (3) dismissing its unjust enrichment claim.

¶ 11 We review a trial court's grant of summary judgment in the light most favorable to the party against whom summary judgment was entered. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 26, 128 P.3d 756, 763 (App.2006); *see* Ariz. R. Civ. P. 56(c)(1). We will affirm summary judgment only if there is no genuine issue as to any material fact and the party seeking judgment is entitled to judgment as a matter of law. *Schugg*, 212 Ariz. at 140, ¶ 26, 128 P.3d at 763; Ariz. R. Civ. P. 56(c)(1). We review the grant of summary judgment de novo. *Per-*

*formance Funding, L.L.C. v. Ariz. Pipe Trade Funds*, 203 Ariz. 21, 23, ¶ 8, 49 P.3d 293, 295 (App.2002).

### A.R.S. § 33–1002

█ ¶ 12 This case requires us to interpret one of Arizona's mechanics' and materialmen's lien statutes, specifically A.R.S. §§ 33–420 and –1002. It is prohibited to file a lien against real property if the lien is "forged, groundless, contains a misstatement or false claim or is otherwise invalid." A.R.S. § 33–420.

¶ 13 A.R.S. § 33–1002.A.2 states:

"Owner–Occupant" means a natural person who:

(a) Prior to commencement of the construction, alteration, repair or improvement holds legal or equitable title to the dwelling by a deed or contract for the conveyance of real property recorded with the county recorder of the county in which the dwelling is located, and

(b) Resides or intends to reside in the dwelling at least thirty days during the twelve-month period immediately following completion of the construction, alteration, repair or improvement and does not intend to sell or lease the dwelling to others. Residence in the dwelling or intent to reside in the dwelling may be evidenced by the following or other physical acts:

(i) The placing of his or her personal belongings and furniture in the dwelling, and

(ii) Occupancy either by the person or members of his or her family.

Thus, for § 33–1002.A.2 to apply, (1) before commencement of the construction, alteration, repair or improvement, a natural person; (2) must hold legal *or* equitable title to the dwelling by a deed or contract for the conveyance of real property; (3) that has been recorded with the county recorder; (4) and the natural person must reside or intend to reside in the dwelling.

¶ 14 Neither party disputes that the Residence is a dwelling or that the Williamsons resided in the home for the requisite period of time. Accordingly, the only issue regarding A.R.S. § 33–1002.A.2 in the trial court

and on appeal is whether a natural person holds legal or equitable title to the Residence.

¶ 15 PVOrbit argues that the Trust and not the Williamsons holds legal title to the Residence. Accordingly, PVOrbit contends the trial court erred in holding the Lien invalid under A.R.S. § 33–1002.A.2 because the Williamson Family Trust owned the Residence rather than a natural person. While we agree that a trust is not a natural person, we must necessarily focus on the statutory definition of owner-occupant to determine whether the lien violated A.R.S. § 33–1002.-A.2.

█ ¶ 16 In a trust, the trustees hold *legal title* and the beneficiaries hold *equitable title.* See *Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 132, 650 P.2d 432, 434 (1982). In this case, the recorded quit-claim deeds state the Residence was transferred from Richard and Kristen Williamson, as husband and wife, to Richard and Kristen Williamson, as trustees of the Williamson Family Trust. We therefore conclude, contrary to PVOrbit's argument, the Trust does not hold legal title to the Residence because the Williamsons, as Trustees, hold legal title to the Residence. As a result, the Williamsons, as Trustees, were entitled to the benefits and protections provided in A.R.S. § 33–1002.A.2.

¶ 17 Because we resolve this issue by recognizing that the Williamsons, as Trustees, hold legal title, we need not reach the Williamsons' additional argument that as beneficiaries of the trust *res*, they also hold equitable title.

¶ 18 We therefore affirm the trial court finding that the owner-occupant exception applied.

### Penalties under A.R.S. § 33–420

█ ¶ 19 PVOrbit argues the court erred in assessing penalties against it under A.R.S. § 33–420 for recording an invalid lien "knowing or having reason to know" of its invalidity, when there is not sufficient legal authority to indicate a trust holding title to property qualifies as an owner-occupant, pursuant to 33–1002. This argument fails, however, because as previously discussed, the Trust does

not hold legal title, the Williamsons, as Trustees, hold legal title.

¶ 20 Pursuant to A.R.S. § 33–420.A, a lien claimant who knowingly or having reason to know of its falsity, files with the county recorder a false or otherwise invalid claim against real property is liable to the owner or beneficial title holder of the real property for a penalty of not less than $5,000. If the claimant refuses to release or correct the lien after receiving a written demand from the owner or beneficial title holder, the claimant shall be liable for not less than $1,000 to the owner or beneficial title holder. A.R.S. § 33–420.C. While the statute does not define the terms "know" or "reason to know," "'reason to know' is a commonly used term in tort litigation." *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 219, 745 P.2d 962, 966 (App.1987). The Restatement (Second) of Torts § 12(1) (1965) states the term is "used throughout the Restatement of [Torts] to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists."[1] "We find these definitions may appropriately be applied to A.R.S. § 33–420. Whether a party has 'reason to know' must … be determined from the circumstances on a case-by-case basis." *Coventry Homes, Inc.*, 155 Ariz. at 219, 745 P.2d at 966.

¶ 21 We have reviewed the record and while we find evidence from which the trial court could have found that PVOrbit should have known the lien was invalid, there is also evidence from which a contrary conclusion could have been reached. Such evidence included before filing the lien, PVOrbit hired Construction Notice Services, Inc. (CNS) to prepare the lien. CNS researched both the ownership of the Residence and its legal description in the records of the Maricopa County Assessor's Office. CNS found the 2005 Deed that conveyed the Residence from Richard and Kristen Williamson as husband and wife to Richard and Kristen Williamson as Trustees. CNS conducted additional research at the Maricopa County Recorder's Office and located the 2004 Deed, which conveyed the Residence from Richard and Kristen Williamson to Richard and Kristen Williamson as trustees of the Trust. This quitclaim deed also noted that Richard and Kristen Williamson were the trust beneficiaries. The 2004 Deed made reference to a beneficiary disclosure, but CNS was unable to locate a beneficiary disclosure document. Since PVOrbit, through CNS, was unable to locate the beneficiary disclosure document, PVOrbit asserts that it was "never put on constructive notice as to what interests in the Trust property the Williamsons enjoyed."

¶ 22 Furthermore, in reviewing the letters exchanged by the parties prior to the filing of these lawsuits, we note that the Williamsons' letter to PVOrbit never discussed the fact that the Residence was part of the Trust or asserted the Williamsons as Trustees held title to the property. The Williamsons' letter merely stated that because they were owner-occupants, resided in the home, and had no signed contract with PVOrbit, the lien was improper. The PVOrbit letter outlined its position that because the Trust held legal title and not the Williamsons, they were not owner-occupants, as defined in A.R.S. § 33–1002.A.2. PVOrbit therefore concluded that the lien was proper.

¶ 23 We have previously held that when a matter is one of first impression and is reasonably debatable, an award of fees and penalties under A.R.S. § 33–420 may be improper. *Performance Funding, L.L.C.*, 203 Ariz. at 28, ¶ 32, 49 P.3d at 300. Even though we have held that the filing of the lien was improper, we also find this was a matter of first impression.

¶ 24 Therefore, based on these facts, we find there was a material issue of fact in dispute regarding whether PVOrbit knew or should have known that the filing of the lien was improper, and therefore granting summary judgment on this issue was error.

---

1. Comment (a) explains that reason to know exists when the person would be able to "either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist." Restatement (Second) of Torts § 12 cmt. a.

### Unjust Enrichment

¶ 25 Finally, PVOrbit argues the court erred in its unjust enrichment analysis by simply considering how much the Williamsons paid to complete the project after Freedom abandoned it. PVOrbit also argues that there are genuine issues of material fact as to whether payment was made for the doors package.

¶ 26 The Williamsons concede that "[a]dmittedly, the record reflects that Mr. Williamson and [Freedom] dispute whether the cost of the doors PVOrbit supplied was included in Draw [number six], which the Williamsons paid [Freedom] or in Draw [number seven], which the Williamsons did not pay." However, the Williamsons argue that this factual dispute does not preclude summary judgment on this issue as a matter of law, because it is undisputed that they paid an additional $30,398.59 for the completion of the project.

¶ 27 In *A M Leasing, Ltd. v. Baker*, 163 Ariz. 194, 198, 786 P.2d 1045, 1049 (App. 1989), this court analyzed the supreme court's decision in *Flooring Systems, Inc. v. Radisson Group, Inc.*, 160 Ariz. 224, 772 P.2d 578 (1989), which:

> reviewed and compared the facts then before it with those in five previous decisions, harmonizing results that might otherwise be perceived as conflicting. In each case, the plaintiff, having contributed material or labor to improve the defendant's position or property, expected to be compensated and was not. The cases are of two types: one in which the defendant paid no one for the benefits received; the other in which the defendant paid in full, but paid someone to whom he was contractually liable for payment rather than the plaintiff, who actually provided the materials or services. The plaintiff prevails only in the first group of cases, for only in those may it fairly be said that the defendant has been unjustly enriched.

---

**2.** The Williamsons further argue PVOrbit's unjust enrichment claim would frustrate the purposes of A.R.S. § 33–1002. We disagree. The filing of a proper lien may lead to a lien foreclosure, whereupon it is presumed that the debt is owed. But the filing by a subcontractor of a complaint

¶ 28 Applying that comparison to this case, we find that whether Freedom was paid for the doors and supplies in Draw number six presents a genuine issue of material fact. Accordingly, the trial court should not have granted summary judgment on this claim.[2]

### CONCLUSION

¶ 29 For the above mentioned reasons, we affirm the trial court's decision respecting the owner-occupant exception and reverse and remand to the trial court for proceedings consistent with this opinion respecting whether PVOrbit knew or should have known that filing the lien was improper and whether the Williamsons were unjustly enriched.

CONCUR: PATRICIA K. NORRIS, Presiding Judge, and JOHN C. GEMMILL, Judge.

---

for unjust enrichment places the burden of proof on the subcontractor to prove that the materials or services were provided and that payment was not made to the general contractor by the homeowner.