NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

ALMA HOLCOMB, et al., *Plaintiffs/Appellants,*

*v.*

AMERICAN VALET MEDICAL TRANSPORT LLC, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 16-0406
FILED 4-5-2018

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2013-054947
The Honorable John R. Hannah, Judge

**AFFIRMED**

———————————————

COUNSEL

Scott M. Harris, P.C., Scottsdale
By Scott M. Harris
*Co-Counsel for Plaintiffs/Appellants*

Todd D. Weintraub, PLLC, Scottsdale
By Todd D. Weintraub
*Co-Counsel for Plaintiffs/Appellants*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By Kevin C. Nicholas, Shawn M. Petri, Robert C. Ashley
*Counsel for Defendants/Appellees*

-----

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Kent E. Cattani joined.

-----

H O W E, Judge:

¶1        Alma and Donald Holcomb appeal the trial court's summary judgment for American Valet Medical Transport, LLC, American Valet & Limousine, Inc., Michael Leon Currie, and Patricia Currie (collectively, "American Valet") on their negligence claim. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        American Valet contracted with Mayo Clinic to provide transportation between its two Phoenix-area campuses for its employees and patients.[1] While riding in an American Valet shuttle traveling between the Mayo Clinic locations, the Holcombs were injured when a third party struck the shuttle. They filed this negligence action alleging that American Valet owed them duties of care, including to act reasonably under the circumstances, to provide safe transport, and to adhere to industry standards and its own standards. They claimed that American Valet breached its duties of care by failing to provide safe transport, seatbelts, and a lack of seatbelts warning.

¶3        During discovery, the parties deposed Steven Bergstrom, American Valet's account manager for the 14-passenger shuttles used at Mayo Clinic. His responsibilities included keeping the shuttles in operational order, scheduling drivers for the shuttles, driving a shuttle, and collecting fuel receipts for the billing report. He testified that at the time of the incident, the Mayo Clinic account had shuttles 41, 44, and 46. When the Holcombs were injured, however, they were riding in shuttle 12, which was not a "regular backup" for the Mayo Clinic account. He took shuttle 12 from

-----

[1]        The contract contained an integration clause, which stated that "[t]his Agreement together with the Exhibits hereto constitutes the entire agreement between the parties with respect to its subject matter and supercedes [sic] all past and contemporaneous agreements, promises, and understandings, whether oral or written, between the parties."

another hospital's account because a primary shuttle and backup shuttle for the Mayo Clinic account were not functioning.

¶4   Bergstrom testified that he had "no idea" what the contractual agreement between American Valet and Mayo Clinic stated nor had he seen the agreement. He also stated that he did not have any direct communication with Mayo Clinic about a seatbelt requirement for its shuttles. Bergstrom did believe, however, that American Valet was contractually required to equip all permanent shuttles used for the Mayo Clinic account with seatbelts. He believed so because his "boss," Brian Lubbs, mentioned that American Valet was contractually obligated to have seatbelts in Mayo Clinic's shuttles. Bergstrom clarified that he had heard about the obligation only through Lubbs and that he had never seen the contract and had never been a party to any contractual negotiations between American Valet and Mayo Clinic. He also clarified that he had never discussed the issue with any other American Valet personnel, including Mike Pendergraft, who was listed as the primary contact regarding services under the Mayo Clinic agreement. During Bergstrom's deposition, he did not state Lubbs's specific position with American Valet or if Lubbs had seen the Mayo Clinic agreement or participated in negotiating its terms.

¶5   American Valet moved for summary judgment, arguing that it did not have a duty to provide seatbelts in the shuttle. The Holcombs cross-moved for summary judgment, asserting that American Valet's contract with Mayo Clinic or its undertaking to provide shuttle services established a duty of care to provide seatbelts in the shuttle. In their respective responses and replies, the parties continued to state that the issue was whether American Valet had a duty to provide seatbelts rather than a general duty of care.

¶6   The trial court granted summary judgment for American Valet, ruling that it "had no duty, under Arizona law, to install [seatbelts] in its transport vehicles." The court found that American Valet's written contract with Mayo Clinic did not require American Valet to provide seatbelts. The court also found that because the contract included an integration clause, extrinsic evidence was inadmissible to prove that the parties intended to have a seatbelt requirement. The court further found that Bergstrom did not have firsthand knowledge of the agreement or negotiations between Mayo Clinic and American Valet. The Holcombs timely appealed.

## DISCUSSION

**¶7** The Holcombs argue that American Valet breached its duty to provide seatbelts in the shuttles it operated on behalf of Mayo Clinic, and thus the trial court erred by granting summary judgment for American Valet.[2] This Court reviews entry of summary judgment de novo, viewing the facts in the light most favorable to the party against whom the court entered judgment. *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71 ¶ 11 (App. 2011). "We will affirm summary judgment only if there is no genuine issue as to any material fact and the party seeking judgment is entitled to judgment as a matter of law." *Id.* We must determine whether the judgment rather than the reasoning of the trial court was correct, *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 181 ¶ 9 (2007), and will affirm a judgment if the trial court was correct in its ruling for any reason, *Gnatkiv v. Machkur*, 239 Ariz. 486, 488 ¶ 1 (App. 2016).

**¶8** To establish American Valet's negligence, the Holcombs must prove (1) the existence of a duty recognized by law requiring American Valet to conform to a certain standard of care, (2) American Valet's breach of that standard, (3) a causal connection between American Valet's conduct and the Holcombs' injury, and (4) actual damages. *See Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007). Whether a duty exists is a question of law for the court to decide, whereas the remaining three elements are generally issues of fact for a jury. *Id.*

**¶9** A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.* at ¶ 10. The standard of care, in contrast, is the specific thing the defendant must do or not do to satisfy its duty. *Id.* In determining whether a duty exists, a court examines the parties' relationship and public policy considerations. *Quiroz v. ALCOA Inc.*, 240 Ariz. 517, 519–20 ¶ 8 (App. 2016). "Duties of care may arise from

---

[2] Although the trial court ruled that American Valet did not have a duty to install seatbelts in the Mayo shuttles, it did not address whether American Valet owed the Holcombs a duty of care, which was alleged in their amended complaint. The Holcombs have not raised this issue in their opening or reply briefs, however, and at oral argument they continued to argue that the disputed issue was whether American Valet had a duty to install seatbelts. As such, they have waived this issue on appeal, and we will not address it. *See Dawson v. Withycombe*, 216 Ariz. 84, 100 n.11 ¶ 40 (App. 2007).

special relationships based on contract, family relations, or conduct undertaken by the defendant." *Gipson*, 214 Ariz. at 145 ¶ 18.

¶10      The Holcombs argue that American Valet's agreement with Mayo Clinic created a legal duty to equip Mayo Clinic's shuttles with seatbelts. The primary goal in interpreting the language of a contract is to ascertain and give effect to the intent of the parties. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). "The parol evidence rule, as traditionally stated, renders inadmissible any evidence [of] prior or contemporaneous oral understandings and of prior written understandings, which would contradict, vary or add to a written contract which was intended as the final and complete statement or integration of the parties' agreement." *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 389 (App. 1980). Parties may present parol evidence, however, to show that a modification to the written contract subsequently took place. *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 212 (App. 1991). Additionally, the parol evidence rule applies only when the parties to an action seek to enforce obligations that arise from the contract. *Id.*

¶11      Here, the written contract between American Valet and Mayo Clinic did not require the installation of seatbelts in Mayo Clinic's shuttles, and the contract included a clear integration clause. If the Holcombs were attempting to introduce Bergstrom's testimony to require American Valet to equip the shuttles with seatbelts, then the parol evidence rule would preclude Bergstrom's testimony. The Holcombs, however, are not seeking to enforce the alleged obligation and are instead attempting to show only that a contractual duty existed. Additionally, the Holcombs are allowed to present parol evidence to show that a modification to the written contract occurred. As such, the parol evidence rule is inapplicable and the trial court erred by finding that extrinsic evidence was inadmissible to prove that the parties entered into an agreement requiring seatbelts.

¶12      Even if Bergstrom's testimony is considered however, the Holcombs still did not present sufficient evidence to support their claim. Bergstrom's testimony did not state that the contract, original or modified, required seatbelts in *all* Mayo Clinic shuttles. Instead, he stated that he believed that the contract required seatbelts only for Mayo Clinic's *permanent* shuttles. He made this distinction multiple times during his deposition. Because the subject shuttle was not one of Mayo Clinic's permanent shuttles, Bergstrom's testimony does not affect the outcome of this case. Thus, the trial court did not err by finding that American Valet did not have a contractual duty to provide seatbelts in the subject shuttle

even though we disagree with its reasoning. *See Gnatkiv*, 239 Ariz. at 488 ¶ 1.

¶13 The Holcombs also argue that under Restatement (Second) of Torts ("Restatement") § 324A, American Valet's conduct, practice, and undertaking created a legal duty to equip Mayo Clinic shuttles with seatbelts. If a person voluntarily undertakes an act, then that person must perform the duty with due care and is liable for any lack of due care in performing it. *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 137 ¶¶ 45–46 (App. 2014). A party who undertakes a duty to render services to another, gratuitously or for consideration, is subject to liability to a third person for harm resulting from a failure to exercise reasonable care if (a) the failure to exercise reasonable care increases the risk of such harm, (b) the party has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or third person upon the undertaking. Restatement § 324A(a)–(c); *see also Collette v. Tolleson Unified Sch. Dist., No. 214*, 203 Ariz. 359, 366 ¶ 31 (App. 2002) (using Restatement § 324A to determine whether a duty existed).

¶14 The Holcombs rely on Bergstrom's testimony to show that American Valet voluntarily undertook a duty to provide seatbelts in the Mayo Clinic shuttles. Although Bergstrom did not have firsthand knowledge of the contract, he was qualified to testify to American Valet's conduct that he observed. But Bergstrom asserted that only Mayo Clinic's *permanent* shuttles were required to have seatbelts. The shuttle at issue, however, was not one of the permanent Mayo Clinic shuttles, and the Holcombs have not presented evidence that Mayo Clinic or American Valet undertook a duty to provide seatbelts in nonpermanent shuttles. Thus, § 324A(b) is inapplicable. The Holcombs also have not presented evidence that they knew about the alleged undertaking to have seatbelts in the subject shuttle or that they relied on the undertaking. Therefore, § 324A(c) is also inapplicable. Regarding § 324A(a), American Valet did not increase the Holcombs' risk of harm. The general risk of harm in this case is injury from a motor accident. American Valet did not undertake the duty of providing seatbelts in the temporary shuttle, and thus its inaction did not increase the risk of harm to the Holcombs. As such, the court correctly determined that § 324A was inapplicable.[3]

---

[3] Because we have affirmed the trial court's ruling on other grounds, we need not address American Valet's argument that this Court should nevertheless affirm the trial court's summary judgment on the alternative

**CONCLUSION**

**¶15** For the foregoing reasons, we affirm. We will award costs to American Valet upon its compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

basis that the Holcombs failed to demonstrate that the lack of seatbelts in the shuttle caused or enhanced their injuries.