687 P.2d 389

**BONUS ELECTRIC, INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**Dr. Paul J. SLOSSER and Betty Slosser, husband and wife, Defendants-Appellants.**

**No. 1 CA–CIV 6343.**

Court of Appeals of Arizona, Division 1, Department C.

May 3, 1984.

Thaddeus G. Baker, P.C. by Barton L. Baker, Yuma, for plaintiff-appellee.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by D. Michael Mandig, Tucson, for defendants-appellants.

## OPINION

JACOBSON, Chief Judge.

Must a sub-contractor who supplies both labor and materials to a construction project give the preliminary twenty day notice required by A.R.S. § 33–992.01 [1] in order to perfect a lien on the construction property? This is the sole issue presented by this appeal.

The facts are not in material dispute. The defendants-appellants, Dr. Paul J. Slosser and Betty Slosser are the owners of real property located in Yuma, Arizona known as the Rowe Realty Building. In August or September, 1977, the Slossers contracted with Pace Associates, Inc. (Pace) to perform certain remodeling and additions to this building. Pace, in turn, sub-contracted with plaintiff-appellee, Bonus Electric, Inc. (Bonus) to perform all the electrical work in connection with that contract. Under Bonus' contract with Pace, it was to supply all the labor and electrical materials necessary to perform the job for the sum of $2,785. The majority of this sum represented labor costs. Bonus started work on September 30, 1979 and completed its work on March 21, 1980.

The Slossers have completely paid Pace, but Pace has not paid Bonus. On April 25, 1980, Bonus filed a mechanic's lien on the property and brought this action to foreclose that lien. There is no dispute that Bonus performed the work in connection with its contract with Pace and it is agreed that the sum of $2,785 is a reasonable sum for the work performed. It is also agreed that Bonus is a duly licensed electrical contractor under the provisions of Title 32, Chapter 10, Arizona Revised Statutes, and that Bonus did not give preliminary notice to the owner. The trial court entered judgment for Bonus and the Slossers have appealed.

The sole issue before the trial court and on appeal is whether Bonus could legally file a lien without first having given the preliminary notice required by A.R.S. § 33–992.01(B), which provides:

Except for a person under direct contract with the owner, or a contractor whose claim of lien arises out of labor for which he is licensed pursuant to Title 32, Chapter 10, who is under direct contract with the original contractor or one performing actual labor for wages, every person who furnishes labor, materials, machinery, fixtures or tools for which a lien otherwise may be claimed under this article shall, as a necessary prerequisite to the validity of any claim of lien, serve the owner ... with a written preliminary twenty day notice as prescribed by this section.

Under the statute, this preliminary notice must be "given not later than twenty days after the claimant has first furnished labor, materials, machinery, fixtures or tools." A.R.S. § 33–992.01(C).

The Slossers' argument is relatively straightforward. They contend there are three classes of individuals who are not required under the statute to give the preliminary notice: (1) those under direct contract with the owner; (2) a licensed contractor "whose claim arises out of labor" and who has a direct contract with the original contractor (those individuals falling within the first class); and (3) laborers for wages. Bonus admittedly does not fall into the first or third categories. The Slossers argue that since Bonus supplied both labor *and materials*, it also does not fall into the second category as being one "whose claim of lien arises out of labor" and therefore is not one of the exempt classes. In the alternative, the Slossers argue that Bonus is only entitled to lien the property for that portion of its bill attributable to labor.

Bonus, on the other hand, contends that the legislative intent manifested by this statute was to protect innocent homeowners from liens filed by persons of whom the owner would have no knowledge but who

---

1. Amended by Laws 1979, Ch. 202, § 2 and Laws 1983, Ch. 143, § 1.

might have performed services in connection with the construction which would entitle them to lien the property. Under such a legislative intent, it would be illogical to defeat the lien of the licensed sub-contractor who had a direct contract with the general contractor (and who presumably was on the job site and thus known to the owner) simply because that sub-contractor incidentally supplied materials in connection with the performance of the sub-contract. In essence, Bonus contends that the statute envisioned two classes of potential lien claimants, (1) those of whom the owner would presumably have knowledge, and (2) those with whom the owner would have no direct contact and hence no knowledge. It is only the latter group which must give the notice to alert the owner of their potential liens and thus allow the owner to protect himself against double payment.

The Slossers rely primarily upon *Rich-Lee Equip. Rentals, Inc. v. Intermountain Constr. Co.*, 79 Cal.App.3d 581, 145 Cal.Rptr. 106 (1978), for their contention that one who supplies both equipment and labor does not fall into the statutory category of "arising out of labor" and therefore is required to give the preliminary notice. California does have a preliminary notice statute similar to the Arizona statute, except that under the California statute (Cal.Civ. Code § 3097 (Supp.1983)), the only individuals exempt from giving the preliminary notice are those "under direct contract with the owner or one performing actual labor for wages, or an express trust fund."

Involved in *Rich-Lee Equip. Rentals* was a lienor who had supplied bulldozers and operators to a sub-contractor who had contracted with the general contractor to perform earth-moving work on the construction project. This lienor contended that he had "performed actual labor for wages" on the project and thus was exempt from giving the preliminary notice required by the statute. In rejecting this contention, the California court noted:

The legislature has recognized the need to protect the property owner, who may not be in direct contact with every person who contributes to the work of improvement on the property. The lien laws are for the protection of property owners as well as lien claimants. [Citations omitted]. The existence of numerous specialties has greatly multiplied the number of subcontractors and suppliers who may be involved in any construction work. As a consequence, for the protection of the owner as well as the lien claimant, the Legislature has enacted the various notice requirements now found in the statutes. [Citations omitted]. Clearly, the purpose of the preliminary notice requirement now found in Civil Code Section 3097 is to advise the owner at an early stage of claimants with whom he might not have direct contact and hence no actual notice.

The court went on to hold that the notice statute created two classes of lien claimants: (1) those who have a direct contract with the owner by reason of a contract or performance on the property, and (2) those whose relationship is indirect so that the owner may not necessarily be aware of their contribution to the improvement. The California court found that the lien claimant fell into the latter category and therefore was not exempt from giving the preliminary notice in order to perfect its lien.[2]

We note that the Arizona statute differs from that of California by including within the class of lien claimants who are not required to give notice those persons who hold a contractor's license and who have a direct contract with the general contractor and "whose claim of lien arises out of labor." However, we find the legislative intent expressed by the California court to be the same as that in Arizona—to provide the owner with notice of those potential lien claimants with whom he may not have had direct contact and thus are unknown to him.

2. The result reached in *Rich-Lee Equip. Rentals* would be the same under the Arizona statute as the California claimant did not have a direct contract with the general contractor.

Obviously, the legislature felt that licensed sub-contractors who have direct contracts with the general contractor and who have sufficient contact with the job that the owner would be aware of their contribution to the work should not be required to give that owner notice of their presence. By limiting that group to persons "whose claim arises out of labor," did the legislature intend to exclude from that known class, individuals who supplied materials incidental to what is predominately a labor-related job? We believe not.

We are of the opinion that by differentiating between labor for wages and licensed contractors whose claims arise out of labor, the legislature intended to describe a class whose services may be predominately labor oriented but is sufficiently skilled to require the protection of the licensing statute. These skilled professions are recognized by the Registrar of Contractors (See A.C.R.R. R4–9–02 and 03), and include both persons bringing their labor skills to the job site, and also those bringing to the job site the necessary materials and equipment to perform those skills.

In our view such a classification of sub-contractors providing labor and materials incidental thereto pursuant to a direct contract with a general contractor comports with the realities of the construction industry. The court is aware that in numerous construction contracts a general contractor, in submitting a bid on a particular job, does not normally intend to perform all the labor or supply all the material or equipment himself. Rather, the general contractor will normally utilize the services of specialty sub-contractors to perform individual portions of the overall contract. In a normal residential construction, this may entail the use of sub-contractors to perform the plumbing, the electrical work, the installation of heating and cooling, plastering, painting, landscaping and such other specialty contractors as the extent or type of construction demands. Normally, these sub-contracts are bid and let not on the basis of labor alone, but as a "package" deal—the supplying of "on the job site" labor and the incidental materials and equipment necessary to perform the totality of the sub-contract. By knowing the total cost of the "package" made available by the sub-contractors, the general contractor is able to bid the total cost of the job to the owner. It would be the rare construction sub-contractor who would perform only "labor" without also supplying some materials.

Since these types of sub-contractors are "on the site" so as to give notice to the owner by their presence of their potential lien rights, the legislative intent of protecting the owner against unknown lien claimants is satisfied. We therefore hold that the term "whose claim of lien arises out of labor" includes licensed sub-contractors whose contracts require that they furnish labor on the site and incidental materials and equipment. Since Bonus falls within this classification, it was exempt from giving the preliminary notice required by A.R.S. § 33–992.01. Therefore, the judgment of the trial court is affirmed.

CORCORAN, P.J., and EUBANK, J., concur.