49 P.3d 293

**PERFORMANCE FUNDING, L.L.C. an Arizona limited liability company and Performance Mechanical, L.L.C. an Arizona limited liability company, Plaintiffs–Appellees,**

v.

**ARIZONA PIPE TRADE TRUST FUNDS; Arizona Sheet Metal Workers Local 359 Trust Funds, Defendants–Appellants.**

No. 1 CA–CV 01–0536.

Court of Appeals of Arizona, Division 1, Department C.

June 18, 2002.

Review Denied Dec. 3, 2002.*

* Chief Justice Jones voted to grant review.

David M. Reaves, P.C. By David M. Reaves, Phoenix, Attorneys for Plaintiffs–Appellees.

Ward, Keenan & Barrett, P.C. By Gerald Barrett, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

HALL, Judge.

¶ 1 The Arizona Pipe Trades Trust Funds [1] and the Arizona Sheet Metal Workers Local 359 Trust Funds [2] (collectively, the "Trust Funds") appeal from the trial court's summary judgment in favor of Performance Funding, L.L.C. and Performance Mechanical, L.L.C. (collectively, "Performance"). The Trust Funds and Performance both asserted lien rights to funds that Motorola, Inc. owed to Industrial Mechanical, Inc. ("Industrial"), in connection with a construction project at Motorola's property in Mesa, Arizona, and filed this action to resolve a dispute over the validity of the Trust Funds' liens. Because the Trust Funds' liens are invalid, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The underlying facts are undisputed. Industrial was a mechanical contractor that provided construction services and equipment to Motorola, Inc., from July 1, 1998 through November 13, 1998. Industrial's employees were union workers, and Industrial was a party to contracts with the Phoenix-area pipe trades union and the Phoenix-area sheet metal workers union. The contracts required Industrial to make contributions to the Trust Funds based upon the hours worked by each union employee each month. They also required that Industrial post performance bonds in favor of the Trust Funds to ensure payment of the contributions owed.

¶ 3 Performance Funding, a factoring receivables and lending company, loaned funds to Industrial and acquired a security interest in all of Industrial's assets, including its receivables, in February 1998. Industrial ceased doing business in November 1998, when Performance Funding foreclosed its secured interest in Industrial's assets, including its receivables. After the foreclosure, Performance Funding established a subsidiary, Performance Mechanical, to complete Industrial's projects. Performance Mechanical completed work on the Motorola project sometime before December 31, 1998.

¶ 4 Industrial had paid to its employees all of the wages it owed directly to them through the time of the foreclosure. Sometime before the foreclosure, however, Industrial had stopped making fringe-benefit contributions to the Trust Funds. Although Industrial had posted performance bonds in favor of the Trust Funds, the amounts Industrial owed for fringe-benefit contributions exceeded the amount of the bonds.

¶ 5 In January 1999, the "various Arizona Pipe Trades Trust Funds," and the "various Arizona Sheet Metal Workers Local 359 Trust Funds" each filed a Notice and Claim of Lien for "fringe benefit contributions" pursuant to Arizona Revised Statutes ("A.R.S.") section 33–993 (1998) against Motorola's Mesa, Arizona property. After receiving partial payment of their claims from the performance bonds posted by Industrial, the Trust Funds filed amended liens, with the Pipe Trades Trust Fund claiming entitlement

1. The Arizona Pipe Trades Trust Funds consist of the Arizona Pipe Trades Health and Welfare Trust Fund, the Arizona Pipe Trades Pension Trust Fund, the Arizona Pipe Trades Defined Contribution Fund, the Arizona Pipe Trades Industry Promotion Fund, and the Arizona Pipe Trades Joint Apprenticeship Committee. The first three funds are Taft–Hartley funds.

2. The Arizona Sheet Metal Workers Local 359 Trust Funds include the Arizona Sheet Metal Workers Local 359 Health and Welfare Trust Fund, the Arizona Sheet Metal Workers Local 359 Pension Trust Fund, the Arizona Sheet Metal Workers Local 359 Vacation Savings Fund, the Arizona Sheet Metal Workers Local 359 Industry Promotion Fund, the Arizona Sheet Metal Workers Local 359 Joint Apprenticeship Committee, the Arizona Sheet Metal Workers Local 359 Journeyman Training Fund, the Arizona Sheet Metal Workers Local 359–401(K) Fund, and the Arizona Sheet Metal Workers Local 359 Youth–to–Youth Fund. The first two funds are Taft–Hartley funds.

to $105,241.66, and the Sheet Metal Workers Trust Fund claiming entitlement to $43,051.58. The Trust Funds did not serve any person or entity with a preliminary twenty-day notice as set forth in A.R.S. § 33–992.01 (1992).

¶ 6 Faced with competing claims to the funds it owed to Industrial, Motorola declined to pay the funds to any party. Performance sued Motorola and the Trust Funds (as well as other parties who later were dismissed from the lawsuit) seeking to establish that its lien had first priority, demanding payment of the funds held by Motorola, and requesting an award of damages, costs, and attorneys' fees pursuant to A.R.S. § 33–420 (1994) against the Trust Funds for wrongful filing of the Trust Funds' liens. The Trust Funds counterclaimed, seeking a declaration that their liens were first in priority to Performance's lien and payment of their claims from the funds held by Motorola. Eventually, Motorola interpleaded the disputed funds with the clerk of the superior court in exchange for dismissal from the lawsuit. Upon the parties' agreement, the clerk of the court paid to Performance all of the funds not claimed by the Trust Funds, and Performance and the Trust Funds then litigated the validity of the Trust Funds' liens in this action.

¶ 7 On cross-motions for summary judgment, the trial court ruled that the Trust Funds had standing to assert a mechanics' lien but that they were not exempt from the preliminary twenty-day notice requirement of A.R.S. § 33–992.01(B) because the Trust Funds were not a "person performing actual labor for wages." Because the Trust Funds' mechanics' liens were not properly perfected, the trial court concluded that the interpleaded funds should be paid to Performance. The trial court also denied Performance's motion and the Trust Fund's cross-motion for summary judgment on the issues of Performance's entitlement to attorneys' fees and/or damages for wrongful filing of the liens. Upon the parties' stipulation, the trial court entered judgment pursuant to Arizona

Rule of Civil Procedure 54(b) on the issue of the validity of the Trust Funds' liens. The Trust Funds timely appealed.

## DISCUSSION

### A. Arizona's Mechanics' Lien Statutes

¶ 8 This case turns upon the interpretation of Arizona's mechanics' and materialmen's liens statutes, specifically A.R.S. §§ 33–981 (2000)[3] and –992.01(B). We review the trial court's summary judgment de novo. *See Great Am. Mortgage, Inc. v. Statewide Ins. Co.,* 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997) (interpretation of statute is question of law).

¶ 9 Section 33–981 provides in relevant part:

A. *[E]very person who labors* or furnishes professional services, materials, machinery, fixtures or tools in the construction ... of any building, or other structure or improvement, shall have a lien on such building ... for the work or labor done or professional services, materials, machinery, fixtures or tools furnished....

. . . .

D. A person required to give preliminary twenty day notice pursuant to § 33–992.01 is entitled to enforce the lien rights provided for in this section only if he has given such notice and has made proof of service....

(Emphasis added.) Section 33–992.01 provides in relevant part:

B. *Except for a person performing actual labor for wages, every person who furnishes labor,* professional services, materials, machinery, fixtures or tools for which a lien otherwise may be claimed under this article shall, as a necessary prerequisite to the validity of any claim of lien, serve the owner ..., the original contractor ..., the construction lender, if any, and the person with whom the claimant has contracted for the purchase of those items with a written

---

**3.** The events at issue occurred in 1998. A.R.S. § 33–981 was amended in 1998. Because the amendment is not relevant to the issues raised

herein, and for ease of reference, we cite the current volume and version of the statute.

preliminary twenty day notice as pre-scribed by this section.

(Emphasis added.) The twenty-day notice must be given before recording the mechanics' lien, must be given "not later than twenty days after the claimant has first furnished labor, professional services, materials, machinery, fixtures or tools to the jobsite," and must contain very specific types of information in a format set forth in the statute. A.R.S. § 33–992.01(A)(4) and (C).

¶ 10 Arizona's lien statutes are remedial and should be liberally construed to achieve their primary purpose of protecting laborers and materialmen. *See, e.g., Kerr-McGee Oil Indus., Inc. v. McCray*, 89 Ariz. 307, 311, 361 P.2d 734, 736 (1961); *Leeson v. Bartol*, 55 Ariz. 160, 168, 99 P.2d 485, 489 (1940); *United Metro Materials, Inc. v. Pena Blanca Properties, L.L.C.*, 197 Ariz. 479, 484, ¶ 26, 4 P.3d 1022, 1027 (App.2000); *see also* A.R.S. § 1–211(B) (1995) ("Statutes shall be liberally construed to effect their objects and to promote justice."). Additionally, we interpret the statutes in a manner consistent with the "realities of the construction industry." *Bonus Elec., Inc. v. Slosser*, 141 Ariz. 381, 384, 687 P.2d 389, 392 (App.1984).

### B. Are the Trust Funds Authorized to File Mechanics' Liens?

¶ 11 The parties first dispute whether fringe-benefit trust funds are authorized to file mechanics' liens against the owner of property on which a building or structure is constructed, or whether such trust funds are limited to the remedy of collecting on the contractor's bond. *See United States Fidelity and Guar. Co. v. Arizona State Carpenters Health and Welfare Trust Fund*, 120 Ariz. 79, 584 P.2d 60 (App.1978) (allowing trust funds to collect against contractor's license bond).

¶ 12 The mechanics' lien statute provides that *"every person who labors* or furnishes professional services, materials, machinery, fixtures or tools in the construction

... of any building ... shall have a lien on such building." A.R.S. § 33–981(A) (emphasis added). When the word "person" appears in a statute, unless the context requires otherwise, it is defined broadly to include "a corporation, company, partnership, firm, association or society, as well as a natural person." A.R.S. § 1–215(29) (Supp. 2001). Based on consideration of cases from this and other jurisdictions, we conclude that the phrase "every person who labors" includes a fringe-benefit trust fund.

¶ 13 In *United States Fidelity*, this court considered whether fringe-benefit trust funds may seek recovery from a contractor's license bond for the contractor's unpaid fringe-benefit contributions. *See* 120 Ariz. at 79–80, 584 P.2d at 60–61. The statute at issue in *United States Fidelity*, A.R.S. § 32–1152(D) (1972), provided that the contractor's license "bond or deposit shall be subject to claims ... *by any person furnishing labor* ... used in the direct performance of a construction contract." (Emphasis added.) While a fringe-benefit trust fund may not in common parlance constitute a "person furnishing labor," this court agreed with the analysis of the United States Supreme Court, which held that trustees of a fringe-benefit trust fund were authorized claimants under a performance bond. *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), *superceded by statute as stated in United States ex rel. Int'l Bhd. of Elec. Workers, Local Union 692 v. Hartford Fire Ins. Co.*, 809 F.Supp. 523 (E.D.Mich.1992) (construing section 2(a) of the Miller Act, 40 U.S.C. § 270b (1935), a statute similar to § 32–1152(D)).[4] We concluded that the trust funds fell "within the class of persons entitled to recover for the furnishing of labor" because the trust fund contributions, as in *Carter*, were "part of the consideration which the contractor agreed to pay for the services of labor and ... were part of the compensation owed to the employees." 120 Ariz. at 80, 584 P.2d at 61. To allow the trust funds to collect on the bonds would inure to the benefit of the laborers,

---

4. Section 2(a) of the Miller Act stated in part:
   Every person who has furnished labor ... in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under this Act and who has not been paid in full ... shall have the right to sue on such payment bond for the amount, or the balance thereof....

thereby furthering the statute's purpose of protecting persons who supply labor and materials. *Id.* at 81, 584 P.2d at 62. Thus, fringe-benefit trust funds are entitled to seek recovery on behalf of laborers from a contractor's bond for fringe-benefit contributions. *Id.*

¶ 14 Similarly, the Trust Funds in this case are seeking to recover fringe-benefit contributions that Industrial was required to make to the Trust Funds on behalf of each laborer based on the number of hours worked. As in *United States Fidelity*, the contributions were "part of the compensation owed to the employees." *Id.* at 80, 584 P.2d at 61. Thus, allowing the trust funds to assert a lien against the owner's property for the benefit of the laborers would further the purpose of the mechanics' lien statute—to protect the laborers. *See id.*

¶ 15 Moreover, the phraseology of the mechanics' lien statute is analogous to the phraseology of the contractor's license bond statute at issue in *United States Fidelity*. Section 33–981 allows "every person who labors" to assert a lien on the building constructed by his or her labor. This statutory language, like the language at issue in *United States Fidelity*, when considered in light of the statute's purpose to protect the laborers' interests in full payment of all wages owed to them, is broad enough to allow fringe-benefit trust funds to "fall within the class of persons entitled to recover" on behalf of the "person who labors."

¶ 16 Performance seeks to contrast the facts in this case with those in *United States Fidelity* by pointing out that collection on a contractor's bond entails direct action against the property of the defaulting contractor but that permitting a trust fund to enforce a mechanics' lien would allow indirect collection remedies against an entity—the owner of the real property—that was not a party to the contracts requiring trust fund contributions.[5] Contending that this distinction should prevent trust funds from using the mechanics' lien statutes to collect unpaid contributions, Performance cites Indiana as an example of a state that distinguishes between

trust funds' assertion of claims against contractors' bonds and their entitlement to mechanics' lien claims. *Compare Indiana Carpenters Central & Western Indiana Pension Fund v. Seaboard Sur. Co.*, 601 N.E.2d 352, 356 (Ind.Ct.App.1992) (trust funds may assert bond claims) *with Edwards v. Bethlehem Steel Corp.*, 517 N.E.2d 430, 432–33 (Ind.Ct. App.1988) (trust funds may not assert mechanics' lien claims); *see also Sprinkler Fitters v. F.I.T.R. Serv. Corp.*, 461 So.2d 144 (Fla.App.1984) (union may not file mechanics' lien for unpaid benefits owed pursuant to collective bargaining agreement).

¶ 17 Most of the cases from other jurisdictions cited by Performance are inapposite because the mechanics' lien laws in those states are strictly construed either as being in derogation of the common law or because of statutory mandate. *See Edwards*, 517 N.E.2d at 432 ("In Indiana the mechanic's lien statutes are in derogation of the common law and the provisions of such statutes which relate to the creation, existence or class of individuals entitled to such a lien are to be strictly construed."); *Sprinkler Fitters*, 461 So.2d at 146 (statute requiring that mechanics' liens are "to be strictly construed and not to be given a liberal construction"). In contrast, Arizona has a long tradition of liberally construing our lien statutes to ensure that laborers receive their bargained-for benefits. *Supra*, ¶ 10.

¶ 18 Moreover, we are not persuaded by Performance's attempt to distinguish the facts of this case from those in *United States Fidelity*. Preliminarily, as the successor to Industrial, Performance's status in this case is more analogous to that of a defaulting contractor than a third-party owner. More importantly, we reject Performance's argument that an employee trust fund's ability to recover unpaid fringe benefits should vary depending on whether recovery is sought against a contractor's bond or by filing a mechanics' lien. No such distinction could be urged if the affected employees, rather than Trust Funds, were asserting a mechanics' lien. As noted above, the fringe-benefit contributions are a form of—and constitute a

---

5. In *United States Fidelity*, we deemed it unnecessary "to reach the issue of whether the union trust funds could assert a lien against the owner of the property." 120 Ariz. at 82, 584 P.2d at 63.

portion of—the wages the contractor owes the laborers and are therefore protectable interests under the mechanics' lien statute.

¶ 19 Instead, we agree with the cases from jurisdictions that have allowed trust funds to assert mechanics' lien claims. For example, in *Hawaii Carpenters' Trust Funds v. Aloe Dev. Corp.*, 63 Haw. 566, 633 P.2d 1106 (1981), the court held that employee-benefit trust funds could use the mechanics' lien law to enforce its right to collect contributions to the funds. The court explained that, if the trust funds were unable to collect the required contributions, the laborers would not have been "paid in full" for the value of their labor as set forth in their collective bargaining agreements. *Id.* at 1113 (citing *Carter*, 353 U.S. at 217–18, 77 S.Ct. 793). *See also National Elec. Indus. Fund v. Bethlehem Steel Corp.*, 296 Md. 541, 463 A.2d 858, 861–62 (1983) (same).

¶ 20 The Trust Funds are entitled to use the mechanics' lien laws to collect unpaid trust fund contributions on behalf of union employees.

### C. Are the Trust Funds Exempt From the Preliminary Twenty–Day Notice Requirement?

¶ 21 The parties next dispute whether the Trust Funds were required to comply with the preliminary twenty-day notice provision set forth in A.R.S. § 33–992.01. It is undisputed that the Trust Funds did not comply; so, if compliance is required, their liens are invalid. *See* A.R.S. § 33–981(D) (person who is required to give preliminary twenty-day notice may enforce lien rights only if he or she has given such notice and made proof of service).

¶ 22 Unlike § 33–981, § 33–992.01 distinguishes between a "person *performing* actual labor for wages" and a "person who *furnishes* labor" when defining who must provide a written preliminary twenty-day notice. *See* A.R.S. § 33–991.02(B) (emphasis added). A "person performing actual labor for wages" is not required to provide the notice, but a "person who furnishes labor" (or professional services, materials, machinery, fixtures or tools) must comply with notice requirement. *See id.*

¶ 23 The Trust Funds contend that, because they are "standing in the shoes" of the persons who are performing labor for wages, for the purposes of asserting the laborers' rights under the mechanics' lien laws, *see United States Fidelity*, 120 Ariz. at 80–81, 584 P.2d at 61–62, they are likewise "standing in the shoes" of the laborers (the "person[s] performing actual labor for wages") for the purposes of the twenty-day notice statute, and therefore need not comply. We disagree.

¶ 24 First, the policy considerations that warrant a liberal construction of the phrase "person who labors" in § 33–981(A) do not warrant a similarly expansive construction of the phrase "person performing actual labor for wages" because preventing trust funds from asserting remedies extended to "persons who labor" (*see* A.R.S. § 33–981) or "persons who furnish labor" (*see* A.R.S. § 32–1152) might seriously impair the trust funds' ability and obligation to collect the fringe-benefit contributions on behalf of the union workers who have earned them. By contrast, a requirement that fringe-benefit trust funds comply with the preliminary twenty-day notice provision of § 33–992.01(B) will neither impair nor unduly burden their ability to collect contributions on behalf of the union employees. The requirement merely adds an appropriate procedural step of providing notice that union trust funds are fully able to handle. *See Nationwide Mut. Ins. Co. v. Ariz. Health Care Cost Containment Sys.*, 166 Ariz. 514, 517, 803 P.2d 925, 928 (App.1990) ("Although Arizona lien statutes are remedial and are to be liberally construed, their provisions must be strictly followed."); *Bonus Elec., Inc.*, 141 Ariz. at 384, 687 P.2d at 392 (courts should interpret lien statutes consistently with "realities of the construction industry").

¶ 25 Second, the individual employees working at a site may not know that a twenty-day notice is required or have adequate access to the information needed to file the notice (such as who owns the property, the legal description of the property, who the contractors are, or how much labor they will invest in a given project). Thus, the evident purpose of exempting these workers from the requirement to file a twenty-day notice is

to relieve the individual employees of the burden of filing a document itemizing these and other details each time they go to a new job site. By contrast, a trust fund, which is managed by trustees who are expected to be experienced in matters related to construction contracts, can readily obtain the requisite information to protect the fund's interests and the interests of its beneficiaries.

¶ 26 Third, a general rule of statutory construction requires that "[w]hen statutory language gives rise to different interpretations, ... we will adopt the interpretation that is most harmonious with the statutory scheme and legislative purpose." *See State v. Pinto*, 179 Ariz. 593, 596, 880 P.2d 1139, 1142 (App.1994). The mechanics' lien laws and the contractor's bond laws have similar purposes: to protect laborers and materialmen who work on construction projects. Thus, to the extent possible, we will construe similar terms in the statutes in harmony. *See generally Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 102, 459 P.2d 724, 727 (1969) (contractor's bond statute was intended "to encompass all the enumerated persons in section 33–981(A)"). The phrase used in § 33–992.01(B) to describe persons who must comply with the twenty-day notice requirement ("person who furnishes labor") is nearly identical to the phrase used in the statute at issue in *United States Fidelity* ("person furnishing labor"). In that case, we held that fringe-benefit trust funds "fall within the class of persons entitled to recover for the furnishing of labor." 120 Ariz. at 80, 584 P.2d at 61. Consistency suggests that they also fall within that same class ("person who furnishes labor") in the mechanics' lien statutes. The class of "person[s] who furnish[ ] labor" in the mechanics' lien statutes must file and serve a written preliminary twenty-day notice before filing a notice and claim of lien. *See* A.R.S. § 33–992.01(B).

¶ 27 Fourth, interpreting § 33–992.01(B) as the Trust Funds suggest would blur the legislature's carefully drawn distinction between those "performing actual labor" and those "furnishing labor" or other items in connection with a construction project. The right to perfect a lien without giving prior notice of potential lien rights is given only to those who "perform actual labor" for a construction project. All others must provide notice to the owner or other party whose property will be subject to the lien and are entitled to a lien only for sums earned after the date that is twenty days prior to the notice. *See* A.R.S. § 33–992.01(C), (E). This notice requirement is intended to protect persons who may be subject to such liens from exposure to double liability. *See Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. New Pueblo Constructors, Inc.*, 131 Ariz. 278, 280, 640 P.2d 209, 211 (App.1982). Although an owner has presumptive notice of potential claims by laborers who are on the site working, *see Bonus Elec., Inc.*, 141 Ariz. at 384, 687 P.2d at 392, an owner does not have presumptive notice of potential claims by others making claims on their behalf.

¶ 28 In summary, when determining who is entitled to assert the contractor's bond and mechanics' lien remedies, we interpret the statutes broadly to protect the interests of persons the statutes were designed to protect. Thus, in *United States Fidelity* we held that trust funds qualify as "persons who furnish labor" within the meaning of § 32–1152. We now hold that trust funds, acting to recover unpaid fringe-benefit contributions, qualify as "persons who labor" within the meaning of § 33–981(A). Nonetheless, because the legislature, in delineating who must provide a written preliminary twenty-day notice, has made § 33–992.01(B) applicable to "every person who furnishes labor" except "a person performing actual labor for wages," the Trust Funds were subject to the preliminary twenty-day notice requirement to assert lien rights on behalf of their beneficiaries.

¶ 29 Because it is undisputed that the Trust Funds failed to comply with the preliminary twenty-day notice requirement, their liens are invalid.[6]

## D. Costs and Attorneys' Fees on Appeal

¶ 30 As the prevailing party on appeal, Performance is entitled to an award of its costs. *See* A.R.S. § 12–341 (1992).

6. In light of our resolution of this issue, we need not address Performance's additional argument

¶ 31 Performance additionally requests an award of attorneys' fees on appeal pursuant to A.R.S. §§ 33–995(A) and (D) (2000), and 420 (2000). Performance contends that § 33–995 allows a person who is obligated to defend a property owner against a lien claim to assert the owner's rights pursuant to § 33–420. Section 33–420 allows a property owner to collect attorneys' fees and damages if the lien claimant recorded the lien while knowing that the lien was invalid. Performance requests only an award of attorneys' fees pursuant to this section, noting that the issue of its entitlement to damages has not yet been litigated in the trial court.

¶ 32 Because the damages issue has not yet been litigated in the trial court, the record does not support Performance's contention that the Trust Funds knew that their liens would be held invalid. In fact, the trial court specifically ruled that material issues of fact existed on this issue, requiring trial. Moreover, the legal issues raised in this appeal are issues of first impression in Arizona and were reasonably debatable under the existing case law. We, therefore, decline to award fees to Performance under § 33–420. In doing so, we express no opinion on the merits of Performance's claim in the trial court for damages and attorneys' fees.

## CONCLUSION

¶ 33 The trial court's judgment is affirmed. We deny Performance's request for attorneys' fees and grant its request for costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and DANIEL A. BARKER, Judge.

that the Trust Funds' liens were invalid because they did not adequately identify the lien claimants. Similarly, we need not consider whether all of the Trust Funds, or only some of them, qualify as "fringe-benefit trust funds" entitled to assert claims on behalf of the union workers.