TWIN CITY PIPE TRADES SERVICE
ASSOCIATION, INC., Respondent,

v.

PEAK MECHANICAL, INC.,
et al., Defendants,

Spectrum Investment Group,
LLC, Appellant.

No. A04–356.

Court of Appeals of Minnesota.

Dec. 7, 2004.

Vincent J. Fahnlander, Eric L. Lipman, Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent.

John M. Koneck, Brian S. McCool, Fredrikson & Byron, P.A., Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; LANSING, Judge; and FORSBERG,

Judge.*

# OPINION

LANSING, Judge.

This appeal from the district court's entry of summary judgment in favor of the trustees of an employee-benefit trust fund presents the question of whether the trustees may file a mechanics' lien statement on behalf of union employees. Because the trustees are acting as the representatives of the employees and effectively stand in their shoes, we conclude they may file the claim, and we affirm the district court's ruling.

## FACTS

Spectrum Investment Group, LLC, the owner of real property in Eagan, employed a subcontractor, Peak Mechanical, Inc. to make improvements on the property. Peak then employed the pipefitters and plumbers of four different local unions to furnish the required labor from November 2001 through January 2002.

The terms and conditions of the employment were governed by the applicable collective bargaining agreements, to which Peak, by virtue of its membership in Minnesota Mechanical Contractors Association (MMCA), was a party. These agreements incorporated a trust agreement between Twin City Pipes Trades Service Association, Inc. (TCPT), MMCA, the Plumbing Heating Cooling Contractors Association (PHCC), and the Pipe Trades local unions. The trust agreement provides that TCPT, a non-profit corporation, is responsible for the administration of two trusts: the Twin City Pipe Trades Pension Trust and the Twin City Pipes Trades Welfare Fund. A board of trustees, composed in part of MMCA, PHCC, and the local unions, administers the trusts and TCPT.

The trust agreement provides that TCPT is the representative of the union employees in any "legal proceeding, including the filing of mechanics liens on any property where Employees of a delinquent Employer have furnished labor, and for the additional purpose of acting as such representative in any court foreclosure proceeding to enforce payment of the lien." The collective bargaining agreement conjunctively provides that if an employer defaults in making the required contributions to the trust, "the trustees ..., acting on behalf of the Union members or beneficiaries of the funds, may take any legal action as they, in their sole discretion may determine, in order to effect collection of the amounts of wages or other payments which are in default."

Despite its obligations under the collective bargaining agreement, Peak failed to make the required contributions to the employee-benefit trust fund, amounting to a sum of $62,947.45. In an effort to enforce Peak's obligations, TCPT filed mechanics' lien statements against Spectrum as the owner of the property that received the improvements. In both the initial lien statements as well as the amended statements, TCPT indicated that it was the lien claimant for the unpaid benefits. The statements specified that the amount of the lien was "due and owing to the lien claimant for labor performed or skill, material or machinery furnished to the land." The lien statements did not identify the unions or the employees that actually performed the labor on the property.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Spectrum disputed the validity of the liens, and TCPT sought judicial foreclosure. Both parties moved for summary judgment, and Spectrum asserted that TCPT could not claim the lien in its own name without designating the individual employees who performed the work. The district court concluded TCPT had standing to sue on behalf of the union employees and entered judgment for $62,947.45 in favor of TCPT. Spectrum now appeals this judgment.

## ISSUE

Can the representatives of an employee-benefit trust fund enforce an employer's obligation to contribute to the fund by claiming a mechanics' lien on real property improved through the labor of the employees?

## ANALYSIS

On appeal from summary judgment, this court determines whether the case raises issues of material fact and whether the district court erred in its application of the law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). When the district court's decision to grant summary judgment relies on its application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

The mechanics' lien statute provides that whoever "contributes to the improvement of real estate by performing labor, or furnishing skill ... shall have a lien upon the improvement, and upon the land...." Minn.Stat. § 514.01 (2002). The lien claimant must file a lien statement with certain information presented, including the "name[ ] of the claimant" and that the amount is "due and owing to the claimant for labor performed." Minn.Stat. § 514.08, subd. 2 (2002).

Minnesota courts strictly construe the mechanics' lien statute when examining whether the requirements for attachment and creation of the lien are satisfied. *Dolder v. Griffin,* 323 N.W.2d 773, 779–80 (Minn.1982) (discussing the tension between the need for prelien notice to unsuspecting owners and the remedial purpose of protecting laborers). After the creation of the lien, however, courts liberally construe the statute to effectuate its remedial purpose of protecting laborers. *Id.* In applying this two-part test, courts have uniformly applied the stricter standard to the issues of notice and timing, but have not addressed which standard applies to the question of whether the proper lien claimant is named on the statement. *See, e.g., Ryan Contracting, Inc. v. JAG Invs., Inc.,* 634 N.W.2d 176, 184 (Minn.2001) (applying the strict standard to the one-year time limit of section 514.12); *Merle's Constr. Co. v. Berg,* 442 N.W.2d 300, 302 (Minn. 1989) ("There must be strict compliance with the prelien notice statutory requirements.").

We note initially that TCPT met the statutory obligation of stating the name of the claimant regardless of which construction we apply. *See* Minn.Stat. § 514.08, subd. 2(3) (requiring claimant's name on lien statement). The question of whether TCPT is a proper claimant, however, goes beyond this basic requirement. The inquiry of whether *some* name was used is distinct from whether the *right* name was used; the former is subject to a strict construction because it is essential to create the lien. But the issue of whether the right name is used relates not only to the lien's validity but also to the lien's

protective scope. The scope of a lien's protection determines the availability of relief and, in this case, the availability of funds for the workers' welfare and pensions. An interpretation of the scope of protection, within the framework of the statutory language, generally receives a remedial or more liberal interpretation. *See, e.g., Weyerhaeuser v. Twin City Millwork,* 291 Minn. 293, 301, 191 N.W.2d 401, 405–06 (1971) (applying liberal construction to scope of protection afforded subcontractor); *Armco Steel Corp. v. Chicago & N.W. Ry.,* 276 Minn. 133, 137–38, 149 N.W.2d 23, 26 (1967) (accepting substantial statutory compliance against a technical interpretation that would defeat mechanics' lien remedy); *W.T. Bailey Lumber Co. v. Elks' Bldg. Corp.,* 167 Minn. 5, 9, 208 N.W. 198, 200 (1926) (holding that variance between copartnership and corporation listed on lien statement did not defeat lien).

Courts in other states that have addressed the issue of strict or liberal statutory interpretation in construing the scope of entities entitled to the mechanics' lien protection have applied a liberal interpretation consistent with remedial purposes. *See Performance Funding, L.L.C. v. Ariz. Pipe Trade Trust Funds,* 203 Ariz. 21, 49 P.3d 293, 298–99 (Ct.App.2002) (applying a strict standard for construing notice requirement, but interpreting the statute broadly when determining who is entitled to assert the mechanics' lien remedy); *Haw. Carpenters' Trust Funds v. Aloe Dev. Corp.,* 63 Haw. 566, 633 P.2d 1106, 1110 (1981) ("We are considering the law in a remedial aspect, for we are deciding whether the Trustees should enjoy the advantages afforded thereby.").

■ Based on the remedial approach that Minnesota law extends to the protective scope of mechanics' liens and the instructive reasoning from other jurisdic-

tions, we conclude, as a preliminary matter, that although the rule of strict construction applies to the determination of whether a lien statement includes some identification of the lien claimant, we use a rule of liberal construction in resolving the issue of whether the claimant was entitled to file the statement.

■ Minnesota has not addressed the issue of whether a trustee of an employment-benefit fund is a proper mechanics' lien claimant. Although not strictly precedential, a United States Supreme Court case with a closely aligned issue provides significant guidance. In *United States ex rel. Sherman v. Carter,* the Supreme Court determined that the language in the Miller Act referring to a "person who has furnished labor," includes trustees of an employee-benefit trust fund. *United States ex rel. Sherman v. Carter,* 353 U.S. 210, 218–19, 77 S.Ct. 793, 798, 1 L.Ed.2d 776 (1957) (applying 40 U.S.C. § 270(b)). The Court, in reaching this conclusion, reasoned that it did not need to decide whether the trustees were assignees in a technical sense. *Id.* at 219–20, 77 S.Ct. at 798. It is sufficient, according to the Court, to say that the trustees' relationship, as defined in the applicable trust and collective bargaining agreements, was "closely analogous to that of an assignment." *Id.* at 220, 77 S.Ct. at 798. The agreements "created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights." *Id.* The Court noted that "the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account." *Id.*

The Supreme Court's reasoning in *Carter* seems particularly relevant since the

1974 passage of the Employment Retirement Income Security Act (ERISA). *See* ERISA, Pub.L. No. 93–406, 88 Stat. 832 (1974) (codified as amended at 29 U.S.C. §§ 1001–1461 (2000)). ERISA imposed a statutory right and duty on the trustees to enforce payment of contributions to trust funds, thus changing the relationship between employers and benefit-fund trustees. *United States ex rel. Int'l Bhd. of Elec. Workers, Local Union 692 v. Hartford Fire Ins. Co.*, 809 F.Supp. 523, 526 (E.D.Mich.1992). The trustees, therefore, "are not dependent on an assignment, either actual or constructive." *Id.*

We recognize that *Carter* is distinguishable in one way: the Miller Act deals with contractors' surety bonds rather than mechanics' liens. The liberal construction traditionally afforded surety bonds corresponds, however, to the remedial interpretation usually given to mechanics' liens. *See Weyerhaeuser*, 291 Minn. at 301, 191 N.W.2d at 405–06 (expressing commitment to liberal interpretation of both statutes that govern contractors' bonds and laws dealing with mechanics' liens). First, the Act embraces the same purpose as the mechanics' lien law at issue: to protect laborers. *See Haw. Carpenters' Trust Funds*, 633 P.2d at 1111 (noting the parallel purposes of the Miller Act and mechanics' lien laws); *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb. App. 35, 642 N.W.2d, 849, 853 (2002) (observing that the purposes of the Miller Act and mechanics' lien laws are the same). Second, the language at issue in *Carter*, "person who has furnished labor," is substantially the same as the critical language in the mechanics' lien statute, "performing labor, or furnishing skill." Finally, only *Carter* has explicitly addressed the unique situation of a trust agreement that confers the right to enforce the employees' claims to the trustees.

Other jurisdictions have employed the Supreme Court's reasoning in *Carter* for guidance in interpreting mechanics' lien provisions. The majority of jurisdictions have followed *Carter* and used a rule of liberal construction to determine the rights of the trust fund representatives. Thus, a "considerable body of authority in analogous situations supports the standing of Trustees of fringe benefit trusts to claim on behalf of those who actually rendered the labor." *Nat'l Elec. Indus. Fund v. Bethlehem Steel Corp.*, 296 Md. 541, 463 A.2d 858, 861 (1983); *see also Dobbs v. Knudson, Inc.*, 292 N.W.2d 692, 695 (Iowa 1980) ("The courts of other jurisdictions which have addressed this problem have uniformly held that the trusts in this kind of situation may file and enforce the claims."); *Omaha Constr. Indus. Pension Plan*, 642 N.W.2d at 853 ("[o]ther jurisdictions which have confronted this same type of action have uniformly held that [trusts] may assert and enforce a lien on behalf of employees-beneficiaries who contributed labor or material during construction.").

In holding that trustees may file claims on behalf of employees for unpaid trust fund benefits, courts have offered a number of reasons for their application of *Carter*. First, the Maryland Court of Appeals, like the Supreme Court, determined that the trusts may file a claim "because the Trusts operate for the benefit of the workers, and payments ... to the Trusts are recognized as beneficial to the workers by federal labor law." *Nat'l Elec. Indus. Fund*, 463 A.2d at 863. The Supreme Court of Hawaii also acknowledged the role of federal labor policy and ERISA when it held that trustees may file mechanics' liens on behalf of the employees. It concluded that a contrary interpretation "would ignore relevant federal policy and fly in the face of logic." *Haw. Carpenters' Trust Funds*, 633 P.2d at 1113. The Supreme Court of Iowa addressed an addi-

tional reason that has particular significance to this case: the effect of a collective bargaining agreement. The court determined that "[a]lthough the right to make the claim for labor furnished ... is given in [the statute] to the person who furnishes it, the trusts have a contractual right to make the claim for those persons." *Dobbs*, 292 N.W.2d at 696.

The Arizona Court of Appeals, in its application of Carter, went further than these courts and held that the phrase "every person who labors" in its mechanics' lien statute included a fringe-benefit trust fund. *Performance Funding*, 49 P.3d at 299. It reached the conclusion in spite of the observation that a "fringe-benefit trust fund may not in common parlance constitute a 'person furnishing labor.'" *Id.*

The four jurisdictions to adopt a contrary view do not provide a compelling basis for rejecting the majority position. *Ridge Erection Co. v. Mountain States Tel. & Tel. Co.*, 37 Colo.App. 477, 549 P.2d 408 (1976); *Edwards v. Bethlehem Steel Corp.*, 517 N.E.2d 430 (Ind.Ct.App.1988); *Chestnut–Adams Ltd. P'ship v. Bricklayers & Masons Trust Funds*, 415 Mass. 87, 612 N.E.2d 236 (1993), *abrogated on other grounds by Cent. Transp., Inc. v. Pkg. Printing*, 429 Mass. 189, 706 N.E.2d 698 (1999); *Int'l Bhd. of Elec. Workers, Local No. 48 v. Or. Steel Mills, Inc.*, 168 Or.App. 101, 5 P.3d 1122 (2000). None of the opposing cases directly address *Carter*. Nor do they involve collective bargaining agreements that explicitly set forth the representational status of the trust. We address briefly the rationale of the opposing jurisdictions to highlight the distinctions.

The Supreme Judicial Court of Massachusetts held that the mechanics' lien statute, which expressly allowed trusts related to the Taft–Hartley Act, 29 U.S.C. § 186 (1988), to file a lien, was preempted by ERISA. *Chestnut–Adams*, 612 N.E.2d at 240–41. But the court's reasoning hinged on the statute's express singling out ERISA-benefits trust funds for state enforcement although ERISA already provided a remedy. *Id.* at 239–40. The Minnesota statute does not single out ERISA-benefits funds; *Chestnut–Adams* is therefore of no assistance in this inquiry.

The Oregon Court of Appeals held that trustees could not foreclose on a mechanics' lien because a second statute expressly granted the trustees a separate lien and, therefore, permitting the trust to foreclose on a mechanics' lien asserted on behalf of the workers would nullify the other statute. *Int'l Bhd. of Elec. Workers*, 5 P.3d at 1125. Minnesota has no supplemental statute comparable to Oregon's.

In the third jurisdiction, the Colorado Court of Appeals concluded that the trustees of a benefit trust could not file a mechanics' lien under the mechanics' lien statute in existence at the time of filing. *Ridge Erection Co.*, 549 P.2d at 412. It based its decision on the effect of a statutory amendment, passed after the filing of the liens at issue in that case, which expressly permitted trustees to file a lien. *Id.* at 411. Thus its conclusion rested on a completely different statutory ground: the intention of the legislature in light of the subsequent amendment. *Id.*; *see also Haw. Carpenters' Trust Funds*, 633 P.2d at 1111 (explaining that *Ridge Erection Co.* relied on the subsequent expression of legislative intent and lacked significant persuasive value). Because Minnesota has no similar amendment, the Colorado decision provides no guidance.

Of all the authority adopting the alternative approach, Indiana has come the closest to addressing this precise issue, in *Edwards v. Bethlehem Steel Corp.*, 517 N.E.2d 430, 432 (Ind.Ct.App.1988). Although the Indiana Court of Appeals indi-

cated that it employs a strict standard to determine whether a lien had attached, it also clarified that it would apply a liberal standard on other issues. *Id.* Despite this superficial similarity to our rules of construction, there is a notable difference between Indiana and existing Minnesota law. The Indiana court explained that it would strictly construe provisions relating to the "creation, existence or *class of individuals entitled to such a lien." Id.* (emphasis added). No Minnesota case has ever suggested that a determination of the class of individuals entitled to a lien is a matter of strict construction. Thus, it appears that Indiana actually employs a stricter standard than Minnesota, and the decision is not instructive.

Although we choose to follow the majority of courts, we decline to go so far as the Arizona Court of Appeals, by concluding that the trust fund somehow "labored" on the property. *See Performance Funding,* 49 P.3d at 299 (interpreting statutory language broadly to include trust). Such an interpretation puts a greater strain on the fabric of the statute than its coherence can sustain. Instead, we agree with courts such as Iowa, which recognize that employees effectively transferred their rights to file liens to the trust fund. *See Dobbs,* 292 N.W.2d at 696 (recognizing trust's contractual right to file claim). We find this interpretation most consistent with the Supreme Court's reasoning, the Minnesota statute, the trust agreement, and the collective bargaining agreement, as well as public policy.

As in *Carter,* the language of the trust agreement at issue in this case suggests a transfer of rights that is at least analogous to an assignment; we find it unnecessary to conclude that the collective bargaining agreement and trust agreement created an actual assignment. By authorizing TCPT to enforce mechanics' liens on their behalf,

the employees effectively transferred their legal rights to file lien statements authorizing TCPT to do so in its own name. *See Kinney v. Duluth Ore Co.,* 58 Minn. 455, 455, 60 N.W. 23, 23 (1894) (holding that the proper transfer of an enforceable claim under the mechanics' lien statute is a valid assignment and that the assignee has the right to file the lien statement in his own name). The trust agreement, a recognized part of the collective bargaining agreement, expressly provides that TCPT will represent the employees in filing mechanics' liens; the language is not ambiguous. A necessary implication of this grant of authority is the power to take the steps necessary to effectively carry out the representation. One such step is the filing of the mechanics' lien. If TCPT were not permitted to file the claim, TCPT would find it substantially more difficult, and perhaps impossible, to meet its federal obligations under ERISA and its contractual obligations to the employees.

In construing the statutory language to permit TCPT to act on behalf of the employees, we believe we best serve the statute's remedial purpose. Otherwise, the employees might not receive the funds to which they are entitled. The countervailing concern of protecting an unsuspecting landowner lacks force, as nothing suggests that TCPT's filing of the lien statement in its own name deprived Spectrum of notice. We therefore join Arizona, Iowa, Maryland, Nebraska, and Hawaii in allowing trustees of employee-benefit trust funds to file mechanics' lien statements on behalf of the employees.

## DECISION

TCPT is a proper lien claimant because it is acting as the representative of the employees who performed labor that contributed to the improvement of real estate. Accordingly, we affirm the district court's

grant of summary judgment in favor of TCPT.

**Affirmed.**